GRINNELL REALTY CO. *v.* GENERAL CASUALTY & SURETY
CO.

1. PRINCIPAL AND SURETY—VARIANCE.
   Where there is no question that bond was meant to cover particular note, variance of two days between date of note and date stated in· bond is not of sufficient importance to affect surety's obligation.

2. USURY—CORPORATIONS—CONTRACTS.
   Usurious payment by corporation does not affect legality of transaction.

3. PRINCIPAL AND SURETY—CONTRACTS.
   Surety company adopting its own wording in bonds is bound thereby.

4. SAME—DISTINCTION BETWEEN "PAID" AND "GRATUITOUS" SURETIES.
   Where, in action on surety company's bond, both the nature of defendant's business and transaction in question show that it was not acting gratuitously, there is no merit in its claim that distinction in regard to liability of "paid" surety and that of "gratuitous" one should not apply.

5. SAME—VARIANCE—LIABILITY OF GRATUITOUS SURETY NOT EXTENDED.
   Under law merchant, liability of gratuitous surety will not be extended to contract varying in slightest degree from one for performance of which he became bound.

6. SAME—LIABILITY OF PAID SURETY—RELEASE.
   Paid surety, in order to be released from obligation by some slight deviation from contract by obligee, must show damage therefrom.

7. SAME—DAMAGE TO PAID SURETY BY VARIANCE NOT PRESUMED.
   There is no presumption that paid surety was harmed by slight deviation from contract by obligee, nor is suggestion of mere contingencies or possibilities sufficient to release surety.

Extension of time of payment of indebtedness as discharging surety, see annotation in 2 A. L. R. 1569.

8. SAME—DAMAGE MUST BE SHOWN.
    Paid surety is not relieved from obligation except where it is shown that there is material departure from contract which resulted in injury to surety.

9. SAME—EXTENSION OF TIME FOR PAYMENT.
    Mere extension of time for payment does not discharge paid surety unless it can be shown that it suffered therefrom.

Error to Wayne; McMahon (Maurice H.), J. Submitted October 15, 1930. (Docket No. 94, Calendar No. 35,130.) Decided January 7, 1931.

Assumpsit by Grinnell Realty Company, a Michigan corporation, against General Casualty & Surety Company, a Michigan corporation, on a contract of surety. From directed verdict and judgment for plaintiff, defendant brings error. Affirmed.

*Arthur J. Adams,* for plaintiff.

*Wilkinson, Lowther, Wilkinson & O'Connell (Kirkland, Fleming, Green & Martin.* and *Frederick J. Ward,* of counsel), for defendant.

BUTZEL, C. J. H. S. Robinson & Company, a Michigan corporation, on September 29, 1928, borrowed from Grinnell Realty Company, plaintiff, the sum of $20,000, and on December 7, 1928, the further sum of $118,000. In each instance it gave its promissory note. The first note provided for serial payments each month and the balance at the end of ten months. It also contained an acceleration clause by which the entire balance would become immediately due in case of failure to make the monthly payments. The second note was payable three months after its date, with interest. Each note was secured by a separate surety bond in which the bor-

rower is the principal, the General Casualty & Surety Company, defendant herein, the surety, and plaintiff, the obligee. The bond securing payment of the first note provided for notice to the surety in the event of any default, but the surety would remain bound in the event of only a partial payment being made and new notes given for the unpaid balance.

The bond securing the $118,000 loan contained the following clause:

"In the event that the Grinnell Realty Company, its successors or assigns, should accept partial payment of said note and accept a new note for any unpaid balance, then this bond is to remain in full force and virtue to guarantee payment of such new note and likewise to remain in full force and virtue to guarantee any subsequent note or notes which are accepted in further renewals or partial renewals, provided, however, notice will be given to the surety of any partial payment and/or any renewals or extensions and the amount and term thereof."

Defendant corporation claims it is released from liability on the first bond given for the $20,000 note because the date of the note was erroneously stated in the bond as October 1, 1928, the date the money was loaned, instead of September 29, 1928, the date of the note. There is no question but that the bond was meant to cover this particular note. The variance is not of sufficient importance so as to affect the defendant's obligation.

The sum of $8,000 was deducted from the $118,000 loan and kept by the plaintiff as a bonus, in accordance with an agreement with the borrower. This was usurious, but it did not affect the legality of the transaction, as it was paid by a corporation. *Thomas* v. *Union Trust Co.*, 251 Mich. 279. When

the $118,000 note became due at the end of the three months' term, borrower paid plaintiff in cash an additional bonus of $8,500 in consideration of the renewal of the loan. This again was usurious, but paid by a corporation. A new note was executed, payable $25,000 on April 12, 1929; $40,000 on May 12, 1929, and $53,000 with interest from March 12, 1929, on June 12, 1929. The new note contained an acceleration clause which provided that in the event of a default in the payment of any installments, the entire unpaid balance would become due and payable at once. Defendant was notified of the renewal of the loan and consented to it. The notice gave the "term" of the renewal note and complied with the provisions of the bond. On April 12, 1929, when the first payment of $25,000 on the renewal note became due, borrower gave plaintiff its checks for $5,000 payable April 16, 1929; $10,000 on April 17, 1929, and $10,000 payable on April 18, 1929. These checks were dishonored. On April 25, 1929, plaintiff received $15,000 in payment of the first two checks. Borrower asked plaintiff for more time in which to make payment of the balance of $10,000. Defendant surety company was notified of the default in the payment of the $25,000 and also of the acceptance of the $15,000 and acknowledged receipt of such notice. There was also a conference between plaintiff and defendant in regard to the default, for the letter confirming the acceptance of the $15,000 by the surety company refers to the oral conversation. Notwithstanding the fact that the note provided that the entire amount of the loan should become due in the event of any default, plaintiff agreed with borrower to wait until May 4, 1929, for the payment of the balance of $10,000 still due on the $25,000 payment.

There was no new note taken nor any formal document executed nor any consideration paid for the extension. Plaintiff testified that no new arrangements were made, and it supposed that in the event the $10,000 was paid on May 4th, the note would be reinstated for the balance. The surety company knew that payments were not being promptly made and that plaintiff was exercising forbearance in attempting to collect the balance. Irrespective of whether the action on the part of plaintiff amounted to an extension or not, there is absolutely no testimony to show that the defendant was in any way damaged thereby.

In order to indemnify defendant surety company against loss, the borrower at the time the bonds were executed, turned over to it shares of stock, at that time of a value of more than twice the aggregate amount of the loans made by plaintiff. There were considerable negotiations between plaintiff and defendant after the borrower made no further payments on the loans. The borrower became bankrupt, and the stock held by defendant as security became of very little, if any, value. Suit was brought by plaintiff against defendant on the bonds. Defendant claimed that it should have been notified of the borrower's payment of the bonus in each instance and particularly upon the renewal of the note. There is no doubt but that defendant looked to its security in assuming this large risk. It adopted its own wording in the bonds and is bound thereby. It could have inserted such provisions both in the bonds and the application for them, so as to have been fully apprised of all of the details of the transactions between the parties. It only demanded that plaintiff notify it of the renewal and the "term." This plaintiff did. Defendant further

claimed that there was no positive testimony to show that it was a paid surety, and that the distinction in regard to the liability of a "paid" surety from that of a "gratuitous" one should not apply. Both the nature of defendant's business and the transaction itself show that it was not acting gratuitously. Defendant further claims that it was released from liability on account of plaintiff's agreement to wait for the $10,000 payment until May 4th with the understanding on plaintiff's part that if this payment was made the loan would be reinstated. No agreement was made to that effect. In any event, the remaining payments would become due within a very short period thereafter. Assuming that there was an extension, there is no testimony whatsoever to show that defendant was in any way injured. Plaintiff was endeavoring to collect the note. Had it been successful, it also would have been to the advantage of defendant.

Under the law merchant, the liability of a gratuitous surety will not be extended to a contract which in the slightest degree varies from the one for the performance of which he became bound. The risk he runs will not be increased in any manner without his consent, nor will the possibility of his immediately protecting himself in the event of default be lessened. Strict rules of law, which sometimes almost seemed harsh, frequently relieved him from his obligation on account of some very slight deviation from the contract by the obligee. The surety's liability was limited in, all cases to the strict letter of his bond. In time, however, sureties began to exact compensation, commensurate with the risk they assumed, and surety companies were organized for profit. They charged premiums so as to make their business a profitable one. They drafted their own

bonds and inserted therein such conditions as they thought necessary to properly protect themselves. The law thereupon recognized the difference between gratuitous and paid sureties and required that paid sureties, in order to be released from the obligations of their bond must show that they were damaged by some slight deviation from the contract by the obligee. Their bond was looked upon as one of insurance or indemnity instead of one of suretyship. There is no presumption that a paid surety was harmed, nor is the suggestion of mere contingencies or possibilities sufficient. *Philadelphia* v. *Fidelity & Deposit Co.*, 231 Pa. 208 (80 Atl. 62, Ann. Cas. 1085). It is not relieved from its obligations except when it is shown that there is a material departure from the contract which resulted in some injury to the surety. *Gunsul* v. *American Surety Co. of New York*, 308 Ill. 312 (139 N. E. 620). The mere extension of time in payment does not discharge a paid surety unless it can be shown that it suffered from the extension. *Standard Salt & Cement Co.* v. *National Surety Co.*, 134 Minn. 121 (158 N. W. 802). In *People, ex rel. Townsend, etc., Co.*, v. *Bowen*, 187 Mich. 257, the court said:

"The record contains no evidence that the extension of time granted by the plaintiff to Bowen actually operated to the injury of the defendant bonding company. It seems clear that the old rule applicable to private gratuitous bondsmen is not applicable, where the bond is furnished by a surety company for hire. This view of the rule is indicated by our holding in *Cox* v. *Fidelity & Deposit Co. of Maryland*, 157 Mich. 59, where this court used the following language:

" 'We think the rule of law that bondsmen are treated as a favored class should receive extremely cautious application to contracts like the one at bar,

which is but one of a very large and rapidly growing class where the surety undertakes its liability for hire, and purely as a matter of business, and not of accommodation.' ''

In *Realty Construction Co.* v. *Kennedy,* 234 Mich. 490, the judge charged the jury that if there was any deviation from the contract, the surety was not liable. The jury found for the plaintiff and the surety appealed. The court said:

''This charge was more favorable to defendant than it should have been. It is not enough that there is a deviation from the terms of the contract, but it must be a material deviation with a paid surety, and one which results in injury to it in order to release it from liability.''

At the close of the testimony of the instant case in the lower court, the court directed a verdict in favor of plaintiff against the defendant, in the sum of $116,496. The judgment on the verdict is herewith affirmed, with costs to plaintiff.

WIEST, CLARK, MCDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.