BECKER-BOTER OIL & GAS CO. *v.* MASSACHUSETTS BOND-
ING & INSURANCE CO.

1. PRINCIPAL AND SURETY—DEVIATION FROM CONTRACT—RELEASE OF
SURETY.

Where bond for performance of construction contract is executed
by paid surety, latter is not released from liability by de-
parture in execution of contract unless variation is material
and operates to injury of surety.

2. SAME—CONTRACTS—BREACH OF CONTRACT.

If contractor's delay in drilling oil well was caused by break-
down of machinery and reasons other than owner's failure to
pay installment due, and latter had reason to fear well would
not be completed although substantial sum had been paid on
contract, it was justified in demanding assurance that work
would be prosecuted diligently if money was paid, and such
insistence was for benefit and not injury of contractor's
surety.

3. SAME—WEIGHT OF EVIDENCE.

In action by owner against surety on oil well contractor's bond,
finding of trial court that contractor had breached contract,
entitling plaintiff to recover, *held*, not against great weight
of evidence.

Error to Ottawa; Miles (Fred T.), J. Submitted
January 23, 1931. (Docket No. 126, Calendar No.
35,413.) Decided April 7, 1931.

Assumpsit by the Becker-Boter Oil & Gas Com-
pany, a Michigan corporation, against Massachu-
setts Bonding & Insurance Company, a Massachu-
setts corporation, on a surety bond. Judgment for
plaintiff. Defendant brings error. Affirmed.

*Robinson & Parsons,* for plaintiff.

*Cross, Foote & Sessions,* for defendant.

Fead, J. November 14, 1928; F. M. Gray, Jr., Inc., contracted to drill an oil well for plaintiff, 1,700 or more feet deep, for $7,500 to $8,500, operations to begin within 10 days, and to be prosecuted diligently. Defendant executed a bond to plaintiff, conditioned on the Gray company performing the contract. The well was not completed, and plaintiff had judgment on the bond in the amount it had advanced the Gray company. The trial was before the court without a jury. Defendant contends the findings were against the great weight of evidence and did not support the judgment, that plaintiff had breached the contract and thus released defendant from the bond.

In the course of the transaction, the Gray company was represented by Gray, Weinstein, Watkins and Milaeger, and the plaintiff by Klomparens and others.

From the beginning, performance of the contract varied from its precise terms. The down payment of $2,000 was seven days late. Two thousand dollars more was paid in December. Ordinarily the well could have been completed in about 30 days, but drilling was not commenced until January 2, 1929. The Gray company excused the delay in drilling by weather conditions and the difficulty of obtaining suitable machinery. Plaintiff claimed it was largely due to lack of supervision, and it became fearful the work would not be completed.

On January 7th, $1,750 became due. Gray said he wrote Klomparens, but the latter denied knowledge that the sum was due until a few days later, when Watkins called on him. Drilling stopped January 11th. Defendant claimed it was because of nonpayment of the $1,750. Plaintiff's witnesses said it was because of a break-down of machinery.

Later, Watkins called on plaintiff two or three times. What happened was in sharp dispute. Watkins said he merely demanded the money due. Plaintiff claimed Watkins urged abandonment of the well and offered to return some of the advances if the work were discontinued. On January 18th, Watkins put the matter in the hands of an attorney and again saw plaintiff's officers. They said he insisted upon abandonment of the work, and that they offered to pay the sum due upon assurance that the well would be completed. Gray was consulted by telephone. Plaintiff paid Watkins $1,000. Gray testified the payment was received upon the agreement that the well should be abandoned. Watkins said it was agreed that the well should be abandoned but if the other $750 was paid on the following Monday, January 21st, he would recommence drilling. Plaintiff's witnesses testified that the $1,000 was paid on the contract with the definite agreement that the drilling would be continued.

Later, whether on January 21st or 25th is in dispute but the court found the earlier date, plaintiff gave Gray's attorney a certified check for $750, payable to the order of the Gray company. The attorney testified he telephoned the Gray office and Milaeger told him the work would continue, and the check was given him by plaintiff upon that assurance. Milaeger said the attorney talked with him on January 25th and he instructed him that he, the attorney, had no authority to accept the check or represent the Gray company.

The well, at a depth of 540 feet, was wholly abandoned and the outfit removed by the Gray company January 21st. Some time later, plaintiff told the attorney the work had been discontinued, and he returned the check to it. On January 24th, Gray

company telegraphed to plaintiff that the well had been shut down for nonpayment of the $1,750, that on January 18th the agreement had been to abandon the well and new arrangements would have to be made if plaintiff desired to proceed. Shortly thereafter a receiver was appointed for the Gray company. Later plaintiff tried to induce the receiver to resume drilling.

Few, if any, construction contracts are executed in precise conformity with their terms, and it is the rule that where the bond for performance is executed by a paid surety, the latter is not released from liability by departure in execution of the contract unless the variation is material and operates to the injury of the surety. *People* v. *Bowen,* 187 Mich. 257; *People* v. *Fidelity & Deposit Co.,* 238 Mich. 326; *Realty Construction Co.* v. *Kennedy,* 234 Mich. 490.

Defendant contends plaintiff breached the contract in failing to pay the sum of $1,750 when due, that if prompt payment had been made the well would have been drilled and defendant saved from liability, and the lack of prompt payment caused the discontinuance of the work.

The assumption is untenable that prompt payment of the $1,750 would have resulted in completion of the contract, in view of the fact that prompt payment would have followed, and did follow, verbal assurances by the Gray company that the contract would be performed. If plaintiff's testimony be accepted that the contractor's delay in commencing drilling was unjustified and caused it to fear the well would not be completed although it had already paid Gray company $4,000, that the drilling ceased on January 11th because of a break-down of machinery, and that the Gray company at once there-

after sought to discontinue the work and terminate the contract, the demand for verbal assurances that it would be performed was not unreasonable. In making such demand plaintiff asked no more than the contract called for, and its insistence upon the further and diligent prosecution of the work was for the benefit, not the injury, of defendant.

If, upon nonpayment, the Gray company had declared the contract at an end, the situation would be different. But the time of payment was waived by subsequent negotiations and agreement and the well was not abandoned for failure of prompt payment. Defendant claimed it was discontinued by agreement, and plaintiff said it was because the Gray company had breached the contract. Both claims were supported by testimony.

Plaintiff finally paid the whole amount due. The authority of the attorney to receive the final payment was a question of fact. If it was paid on assurances that the work would continue, as claimed by plaintiff, it performed the contract and the Gray company breached it. The act of the attorney in later returning the check to plaintiff was for the benefit of the defendant, as it decreased its liability.

There was ample testimony to sustain the findings of the court or the converse on all the controlling issues of the case. The question was one of credibility of witnesses. The court held that plaintiff had substantially performed the contract and the Gray company had breached it. It cannot be said that the findings were against the great weight of evidence.

Judgment affirmed, with costs.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.