WILL H HALL & SON, INC v ACE MASONRY CONSTRUCTION, INC

Docket No. 239772. Submitted July 8, 2003, at Detroit. Decided December 30, 2003, at 9:05 A.M. Leave to appeal denied, 470 Mich ___.

Will H. Hall & Son, Inc., a general contractor on a construction project, brought an action in the Genesee Circuit Court against Ace Masonry Construction, Inc., a subcontractor on the project, and Capitol Indemnity Corporation, the subcontractor's surety, alleging breach of contact, fraud, and misrepresentation by Ace and seeking recovery under the surety bond. Ace filed a counterclaim for breach of contract, as well as a third-party action against United States Fidelity & Guaranty Company, the plaintiff's surety. At a jury trial, Capitol moved for a directed verdict in its favor with respect to the plaintiff's claim under Capitol's surety bond. The court granted Capitol's motion, concluding that the plaintiff failed to provide Capitol with timely notice of Ace's default. The plaintiff and Ace then stipulated on the record the release and dismissal of any claims they had against each other. Counsel for Capitol made no statement on the record with respect to the mutual release. The plaintiff appealed the directed verdict in favor of Capitol. The Court of Appeals, Hoekstra, P.J., and Talbot and Zahra, JJ., in an unpublished opinion per curiam, issued June 15, 2001 (Docket No. 222262), reversed and remanded, holding that a reasonable factfinder could conclude that the plaintiff gave Capitol timely notice of Ace's default. On remand, Capitol moved for summary disposition, arguing that an action on the surety bond could no longer be maintained because the plaintiff's release of its claims against Ace operated as a discharge of Capitol. The trial court, Judith A. Fullerton, J., granted the motion. The plaintiff appealed.

The Court of Appeals held:

1. Under principles of res judicata, Capitol did not effectively waive the issue regarding the effect of the plaintiff's release of Ace on Capitol's obligation by not raising the issue in the plaintiff's appeal of the grant of the directed verdict in favor of Capitol. There was no trial court ruling by which the issue could have been raised in the initial appeal.

2. To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation, the secondary

obligor (surety) is discharged from any unperformed duties pursuant to the secondary obligation unless the terms of the release effect a preservation of the secondary obligor's recourse against the primary obligor, or the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor. Here, there is no evidence indicating that Capitol consented to remain liable notwithstanding the release, no language or circumstances indicating that the plaintiff reserved the right to pursue Capitol, and no release terms effecting a preservation of Capitol's recourse against Ace. Because the release was broad, open-ended, and all-encompassing, it cannot be said that the plaintiff intended to retain a claim against Capitol.

Affirmed.

C. L. LEVIN, J., dissenting, would reverse and remand for trial. When an obligee releases the principal obligor, the secondary obligor is discharged from any unperformed duties unless the release preserves the secondary obligor's recourse against the principal obligor, or the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor. The secondary obligor is discharged only to the extent that the obligee's act impairing suretyship status causes loss to the secondary obligor. Genuine issues of material fact remain in this case, thus precluding summary disposition. On remand, Capitol, not the plaintiff, would have the burden of persuasion on the issues of whether the language or circumstances of the release otherwise show the plaintiff's intent to retain its claim against Capitol, and of loss or prejudice to Capitol caused by the plaintiff's act in releasing Ace. Capitol would also have the burden of showing that the amount of loss Capitol sustained as a result of the release of Ace is not reasonably susceptible of calculation or requires proof of facts that are not ascertainable, shifting then the burden of persuasion to the plaintiff to show the amount of Capitol's liability.

SURETYSHIP AND GUARANTEE — RELEASE OF UNDERLYING OBLIGATION.

To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation, the secondary obligor (surety) is discharged from any unperformed duties pursuant to the secondary obligation unless the terms of the release effect a preservation of the secondary obligor's recourse against the primary obligor, or the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor.

*Spender, Robb & Black, P.C.* (by *M. Allen Robb* and *Dawn M. Weier*), for Will H. Hall & Son, Inc.

*Alber Crafton, PLLC* (by *Phillip G. Alber* and *Omar J. Harb*), for Capitol Indemnity Corporation.

Before: MURPHY, P.J., and COOPER and C. L. LEVIN*, JJ.

MURPHY, P.J. Plaintiff appeals as of right from a judgment granting defendant Capitol Indemnity Corporation's motion for summary disposition, which was brought pursuant to MCR 2.116(C)(7)(release) and (10), in this action involving a construction project and a performance bond. We affirm.

Plaintiff was the general contractor for a government Job Corps construction project, and defendant Ace Masonry was a subcontractor providing cement and masonry work on the project. The construction project required that Ace furnish a performance bond intended to protect plaintiff, and one was issued by Capitol. Subsequently, a dispute arose between plaintiff and Ace concerning the masonry work, and the project was not fully completed.

The complaint filed by plaintiff alleged breach of contract, fraud, and misrepresentation with respect to Ace. The complaint also included a claim against Capitol seeking recovery on the performance bond. Ace filed a counterclaim against plaintiff alleging breach of contract, and a third-party complaint against plaintiff's surety United States Fidelity & Guaranty Company.

The trial court granted Capitol's motion for directed verdict during a jury trial in regard to the performance bond claim. The trial court granted the directed

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

verdict, finding a "failure of proof regarding compli-
ance with conditions precedent, including failure to
declare default." Immediately after the trial court
granted the directed verdict, plaintiff requested and
obtained a brief recess to discuss a possible settle-
ment with Ace. Following the recess, and on the
record, plaintiff and Ace stipulated the release and
dismissal of any claims the parties had against each
other.[1] The following colloquy took place regarding
the settlement:

> *Plaintiff's Counsel:* [W]e have had an opportunity to [dis-
> cuss] this matter amongst ourselves, in light of the [court]
> . . . granting Capitol Indemnity's motion for directed verdict,
> the remaining parties in the case have discussed this matter
> and they're willing to settle this case by mutual release of
> all claims against each other.
>
> *Judge:* All right, Mr. Schaffer [counsel for Ace], do you
> wish to be heard on this?
>
> *Ace's Counsel:* I would just concur in that settlement—
> my client is here I just would ask that, on the record, he
> indicate that is his wish to do that. . . .

Ace's representative proceeded to approve the set-
tlement and release. The record does not reflect any
statements by counsel for Capitol during discussion
of the settlement. Further, the record does not indi-
cate whether Capitol's counsel remained in the court-
room after the directed verdict was granted and when
the settlement and release were placed on the

---

[1] An order of dismissal of plaintiff's claims and Ace's counterclaim was
subsequently entered by the trial court. The order contained the signa-
tures of plaintiff's and Ace's counsel but not that of Capitol's counsel.

record.[2] Subsequently, plaintiff pursued an appeal of the directed verdict to this Court.

This Court, in an unpublished per curiam opinion, reversed the trial court's order granting the directed verdict, holding:

> Viewing [the] evidence in a light most favorable to plaintiff, we conclude that a reasonable factfinder could find that defendant received notice that the subcontractor committed a material breach, that plaintiff regarded the subcontractor to have failed to meet its contractual duties, and that plaintiff was asking defendant to perform under the terms of the bond.
>
> To the extent the trial court found plaintiff's notice to defendant untimely, we note that the only time frame provided in the performance bond is the two-year limitations period for filing a lawsuit. Where the time of performance is indefinite, performance may be required to be rendered within a reasonable time. The question regarding the reasonableness of plaintiff's claim, which was filed less than three months after Ace walked off the job, should have been submitted to the jury. [*Hall & Son, Inc v Capitol Indemnity Corp*, unpublished opinion per curiam of the Court of Appeals, issued June 15, 2001 (Docket No. 222262) (citations omitted).]

On remand, Capitol filed a motion for summary disposition, arguing that, in light of plaintiff's decision to dismiss the action against Ace, an action on the performance bond could no longer be maintained. Capitol claimed that the release of the principal, Ace, by plaintiff, the obligee, acted as a discharge of Capitol, the surety. On the basis of Capitol's argument, the

---

[2] Capitol's appellate counsel, who was also trial counsel, told this panel at oral argument, as an officer of the court, that he left the courtroom with his client after the directed verdict was granted but before the settlement and release were placed on the record. Ultimately, our decision does not rest on counsel's presence, or lack of presence, in the courtroom.

trial court granted the motion for summary disposition and dismissed the action. Plaintiff appealed.

Plaintiff argues on appeal that principles of res judicata require that a party raise in an initial appeal all issues that were then present and could have and should have been raised. Therefore, because Capitol did not raise in the previous appeal the issue that plaintiff stipulated the release and dismissal of Ace, thereby arguably denying this Court the opportunity to reject plaintiff's first appeal, Capitol effectively waived the issue on remand. We disagree.

Plaintiff relies on *VanderWall v Midkiff*, 186 Mich App 191; 463 NW2d 219 (1990). The *VanderWall* panel ruled:

> [W]e conclude that the principles of res judicata require that a party bring in the initial appeal all issues which were then present and could have and should have been raised. That is, just as plaintiff was required in the initial appeal to present all arguments why the trial court had erred in granting judgment notwithstanding the verdict, defendants were also required to bring their challenges to the underlying judgment, whether it had been by way of argument in the appellee's brief defending the trial court's action or by way of cross appeal raising issues separate from the issue of the granting of judgment notwithstanding the verdict. [*Id.* at 201.]

Here, there is a distinction because Capitol was not able to validly argue in the first appeal that the trial court properly granted its motion for directed verdict on the alternative basis that Ace had been dismissed as a party. Considering the sequence of events, the settlement had not yet occurred when the trial court directed a verdict in Capitol's favor, and was thus not part of an argument made by Capitol in support of

the motion for directed verdict. Whether as part of an argument in Capitol's appellee brief or in a cross-appeal, there was no "ruling" on which the argument could be predicated with respect to the effect of the settlement and release on the performance bond claim. We acknowledge that Capitol technically had the ability to argue anything it pleased in the first appeal and could have argued that, in light of the settlement and release, no action on the bond could be maintained. However, it is likely that this Court, if faced with such an argument, would have declined to address the issue because there had been no ruling by the trial court on the subject and no arguments by the parties to the trial court on the issue. Moreover, considering that the trial court had already granted a directed verdict, it would not have entertained, in all likelihood, additional arguments as to why plaintiff's action on the bond should be rejected; the settlement was premised on the directed verdict. We conclude that Capitol was not required to raise the issue in the first appeal.

Plaintiff next argues that although the general rule in Michigan is that the discharge of the principal serves as a discharge of the surety, there is an exception where the surety consents to the release of the principal. Plaintiff further argues that there were genuine issues of material fact concerning whether Capitol consented to the release of Ace, where the parties placed the settlement on the record with Capitol's counsel present.

A suretyship contract requires three parties; a principal, an obligee, and a surety. *In re Forfeiture of $8,141 of United States Currency*, 172 Mich App 790, 792; 432 NW2d 442 (1988). A surety is one who under-

takes to pay money or take any other action if the principal fails therein. *Id.* "The liability of a surety is limited by the scope of the liability of its principal and the precise terms of the surety agreement." *Bd of Governors of Wayne State Univ v Building Systems Housing Corp*, 62 Mich App 77, 85; 233 NW2d 195 (1975)(citation omitted). In general, a surety may plead any defense available to the principal, and the liability of the surety is coextensive with the liability of the principal in the bond and can be extended no further. *In re MacDonald Estate*, 341 Mich 382, 387; 67 NW2d 227 (1954).

Plaintiff relies on *Westveer v Landwehr*, 276 Mich 326; 267 NW 849 (1936), for its proposition that there is an exception to the general rule of discharge where the surety consents to the release of the principal. In *Westveer*, a bank loaned money to a country club on multiple occasions, and the club's directors acted as sureties to guarantee payments on the loan through the execution of two bonds; the bonds being continuing guarantees. *Id.* at 327-329. One of the sureties who executed the bonds died and additional promissory notes were issued after his death. *Id.* at 328. Our Supreme Court held that in regards to the renewal notes, issued by the bank after the surety's death and after notice of his death, the deceased's estate was discharged from any liability based on the bond or guaranty. *Id.* at 329. The Court also held, however, that the release of the deceased surety's estate did not discharge the surviving sureties on the renewal notes, where those sureties did not exercise the option to be released from further liability at the time of the deceased surety's death and thus acquiesced in remaining on the guaranty thereafter. *Id.* at 329-330.

*Westveer* did not involve the release of a principal by the obligee as occurred in the case at bar.[3] *Westveer* only dealt with a situation where sureties had the opportunity to be discharged on a debt pursuant to an agreement but failed to exercise the steps necessary to be discharged and acquiesced in continuing liability. Here, Capitol was not required by any agreement to take affirmative steps to be discharged; therefore, it cannot be said that Capitol acquiesced in being held liable on the performance bond. *Westveer* does not stand for the proposition, as argued by plaintiff, that surety liability is continuing where the surety consents to the release of the principal. Even in the context of the facts in *Westveer*, whether the surviving sureties consented to the release of the deceased surety was not an issue and did not play into the Supreme Court's analysis and holding.

Plaintiff also relies on *Greenlee v Lowing*, 35 Mich 63 (1876). In *Greenlee*, the plaintiff brought an action to recover on a replevin bond. A judgment in replevin had been previously entered against the principal obligor by the plaintiff; however, the plaintiff and the principal had a private arrangement whereby the principal was released for consideration with the plaintiff being left at liberty to recover what he could from the sureties. Our Supreme Court stated:

> If an agreement was made releasing Mrs. Ridell [principal obligor] from liability in the judgment rendered against her in the replevin suit, the effect thereof undoubtedly would be to discharge the sureties unless they consented to the agreement, which is not claimed. [*Id.* at 66.]

---

[3] The country club was the principal obligor in *Westveer*, with the bank being the obligee.

The above quote was part of the Court's discussion concerning the propriety of a jury charge, not a substantive discussion on suretyship. Regardless, the case does not support plaintiff's position because the release agreement there allowed the plaintiff to pursue sureties. Therefore, when the Court discussed the matter of the sureties' consent to the agreement, which was not claimed, the consent would necessarily relate to not only the release but also to the sureties continuing potential liability. Here, the record in regards to the settlement and release reveals no agreement by plaintiff and Ace that plaintiff could continue to pursue Capitol. Moreover, the record does not indicate that Capitol consented to the release and its own continuing liability.

Michigan case law is minimal concerning sureties, and there are no cases, of which we are aware, that directly, substantively, and fully address the effect on a surety's liability following the obligee's release of any and all claims against the principal. However, we find guidance in Restatement Suretyship and Guaranty, 3d, § 39 (Release of Underlying Obligation),[4] which provides in relevant part:

> To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation:

---

[4] See also Restatement Security, § 122 (1941), wherein it is stated that "[w]here the creditor releases a principal, the surety is discharged, unless (a) the surety consents to remain liable notwithstanding the release, or (b) the creditor in the release reserves his rights against the surety." We note that this Restatement has now been superseded by Restatement Suretyship and Guaranty, 3d.

\*     \*     \*

(b) the secondary obligor (surety) is discharged from any unperformed duties pursuant to the secondary obligation unless:

(i) the terms of the release effect a preservation of the secondary obligor's recourse . . .; or

(ii) the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor[.]

See also *Axess Int'l, Ltd v Intercargo Ins Co*, 183 F3d 935, 939 (CA 9, 1999); *Amtote Int'l, Inc v Pngi Charles Town Gaming Ltd Liability Co*, 66 F Supp 2d 782, 793-794 (ND W Va, 1999).

In *Axess Int'l, supra* at 939-940, a case involving a $50,000 surety bond covering damages arising from transportation-related activities, the United States Ninth Circuit Court of Appeals held that, pursuant to § 39(b) of Restatement Suretyship and Guaranty, 3d, the surety was not discharged from liability where a clause in the release specifically reserved the obligee's right to claim or take any proceedings against any other party, which clearly reflected an intent to release only the principal. The federal court cited comment d to § 39 of the Restatement in support of the position that the surety is not discharged when the release is intended to only discharge the principal obligor, and this intent can be manifested by a provision in the release. *Axess Int'l, supra* at 939.[5] The

---

[5] The Ninth Circuit Court also relied on Restatement Security, § 122 (1941) (cited by us above at note 4). *Axess Int'l, supra* at 939 n 3. Comment d to Restatement Suretyship and Guaranty, 3d, § 39, provides:

An obligee may release the principal obligor from its duties pursuant to the underlying obligation in a number of different circumstances. In some cases, such as an accord and satisfaction, the

*Axess Int'l* court cited several state and federal decisions that were consistent with its position and the Restatements. *Id.* at 938-939.

Here, there is no evidence indicating that Capitol consented to remain liable notwithstanding the release, no language or circumstances indicating that plaintiff reserved the right to pursue Capitol, and no release terms effecting a preservation of Capitol's recourse against Ace. Because the release was broad, open-ended, and all-encompassing, it cannot be said that plaintiff intended to retain a claim against Capitol. We note illustration 4 to Restatement Suretyship and Guaranty, 3d, § 39, which provides:

> D agrees to construct a building for C for $1,000,000. S issues a performance bond for D's obligation. Soon after starting construction, D abandons the project. Investigation reveals that D is insolvent and has essentially no assets other than equipment left at C's work site. Realizing the futility of pursuing D, C agrees to release D from its obligations pursuant to the construction contract in exchange for title to the abandoned equipment. The circumstances indicate that C intended to retain its claim against S. S is not discharged pursuant to paragraph (b), but is discharged to

---

release is intended to discharge all claims of the obligee (including claims against other obligors) with respect to those duties. In those cases, the secondary obligor is discharged by the release. In other cases, however, the release is intended to discharge only the obligee's claim against the principal obligor, leaving the obligee free to pursue the secondary obligor. Paragraph (b) [of § 39 of Restatement] does not discharge the secondary obligor when the release is intended to discharge only the principal obligor. This intent can be manifested in a provision of the release effecting a preservation of recourse of the secondary obligor or otherwise indicating that the secondary obligor remains liable, or inferred from circumstances that indicate such intent. In the absence of such a provision or such circumstances, of course, the secondary obligor is discharged. . . .

the extent provided in paragraph (c) [value of the consideration for the release].

Here, there was no documentary evidence presented by plaintiff in response to Capitol's motion for summary disposition showing that plaintiff could not recover its damages from Ace, or that the reason for the settlement and release was the insolvency of Ace. It is just as likely that plaintiff settled the case with Ace in order to avoid any potential liability on Ace's counterclaim. In fact, it is apparent that plaintiff was not focusing at all on the future liability of Capitol when placing the settlement on the record, considering that Capitol had already been relieved of liability on the basis of the directed verdict. We conclude that plaintiff has failed to submit documentary evidence sufficient to create an issue of fact with respect to, and in support of, plaintiff's proposition that it intended to retain its claim against Capitol. MCR 2.116(C)(10). In placing the settlement on the record, plaintiff failed to appreciate the possibility that an appeal and a reversal could reinstate its action against Capitol.[6]

---

[6] We respectfully disagree with the dissent's contention that genuine issues of material fact remain, which preclude summary disposition, where Capitol had the burden of persuasion to establish a release, and where Capitol failed to submit relevant documentary evidence in support of its position. We agree that release is an affirmative defense, MCR 2.111(F)(3)(a), and that Capitol had the burden of proof with respect to release. This case, however, must be viewed in the context of a motion for summary disposition. Capitol submitted documentary evidence with its motion for summary disposition, brought under MCR 2.116(C)(7) and (10), in the form of a transcript of pages from the jury trial that contained the settlement that was placed on the record and the amended order of dismissal. It was incumbent on plaintiff to submit documentary evidence to show that an issue of fact existed concerning release in the face of Capitol's evidence in order to survive summary disposition. MCR 2.116(G)(4) ("[A]n adverse party may not rest upon the mere allegations

Plaintiff's assertion that Capitol implicitly agreed to remain liable where it did not object to the stipulated dismissal is without merit. Capitol, having been relieved of liability pursuant to the directed verdict and, assuming that Capitol's counsel was present when the settlement was placed on the record, having heard no statements on the record by counsel for plaintiff and Ace that Capitol would somehow remain liable, had no reason to object to the settlement and release. Once again, the consent of the surety regards consenting to remain liable notwithstanding the release. We will not presume Capitol's consent to remain liable from its silence, assuming that Capitol's counsel was present at the time of settlement.[7]

In a recent legal article discussing the effect of a release on a surety under Restatement Suretyship and Guaranty, 3d, the authors stated that "[i]f the obligee [plaintiff] releases the principal [Ace] *without more*, (a) both the principal and surety [Capitol] are discharged from duties to the obligee, and (b) the principal is discharged from all duties to the surety." Mungall[8] & Arena, *Effect on surety of obligee's release of principal: A critical look at the rules in the restatement*, 70 Def Couns J 328 (2003) (emphasis added). Capitol submitted the transcript of the settlement and

---

or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial."); *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999); *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996).

[7] Any reliance on *The President, Directors & Co of the Farmers & Mechanics' Bank of Michigan v Kingsley*, 2 Doug 378 (Mich, 1846), is misplaced for the reason that here, there was a lack of evidence establishing consent to continuing liability by Capitol.

[8] Daniel Mungall, Jr., served as associate reporter on Restatement Suretyship and Guaranty, 3d.

the amended order of dismissal for consideration in its motion for summary disposition, and plaintiff failed to submit evidence showing anything to the contrary. Therefore, without more, Capitol and Ace were completely released.

The fact that Capitol was a paid or compensated surety does not alter our conclusion. In *Grinnell Realty Co v Gen Cas & Surety Co*, 253 Mich 16, 21-22; 234 NW 125 (1931), our Supreme Court, providing an in-depth discussion distinguishing gratuitous sureties and paid sureties, stated:

> [T]he liability of a gratuitous surety will not be extended to a contract which in the slightest degree varies from the one for the performance of which he became bound. The risk he runs will not be increased in any manner without his consent, nor will the possibility of his immediately protecting himself in the event of default be lessened. Strict rules of law, which sometimes almost seemed harsh, frequently relieved him from his obligation on account of some very slight deviation from the contract by the obligee. The surety's liability was limited in all cases to the strict letter of his bond. In time, however, sureties began to exact compensation, commensurate with the risk they assumed, and surety companies were organized for profit. They charged premiums so as to make their business a profitable one. They drafted their own bonds and inserted therein such conditions as they thought necessary to properly protect themselves. The law thereupon recognized the difference between gratuitous and paid sureties and required that paid sureties, in order to be released from the obligations of their bond must show that they were damaged by some slight deviation from the contract by the obligee. Their bond was looked upon as one of insurance or indemnity instead of one of suretyship. There is no presumption that a paid surety was harmed, nor is the suggestion of mere contingencies or possibilities sufficient. It is not relieved from its obligations except when it is shown that there is a mate-

rial departure from the contract which resulted in some injury to the surety. [Citations omitted.][9]

Here, there is no dispute about deviations or changes in the underlying contract between plaintiff and Ace that might have affected Capitol's obligations under the performance bond. The matter presented to us is merely whether plaintiff's unconditional and broad release, without limitation, and without any consent by Capitol to remain liable, relieves Capitol of liability. Moreover, under Restatement Suretyship and Guaranty, 3d, § 39(a), Capitol would be harmed or prejudiced if plaintiff were allowed to pursue its action on the performance bond because Capitol would have no recourse against Ace. Section 39(a) provides that "[t]o the extent that the obligee [plaintiff] releases the principal obligor [Ace] from its duties pursuant to the underlying obligation: the principal obligor is also discharged from any corresponding duties of performance and reimbursement owed to the secondary obligor [Capitol] unless the terms of the release effect a preservation of the secondary obligor's recourse[.]" Because the terms of the release here do not effect a preservation of Capitol's recourse, and because plaintiff presented no documentary evidence showing Ace to be insolvent or uncollectible, Capitol would be prejudiced and harmed should plaintiff be allowed to pursue the action and recover on the performance bond.

The dissent, quoting Restatement Suretyship and Guaranty, 3d, pp 157, 175, argues that, under the

---

[9] A prejudicial change or modification in duties or obligations is necessary to discharge a paid surety from liability. *Hunters Pointe Partners Ltd Partnership v United States Fidelity & Guaranty Co*, 177 Mich App 745, 749; 442 NW2d 778 (1989).

Restatement, a release discharges a secondary obligor, Capitol, only to the extent that it suffers a loss. The Restatement provision concerning the dissent's argument is found in § 39. We have already concluded, on the basis of the documentary evidence, that Capitol would suffer a loss if it became liable to plaintiff. Moreover, we disagree with the dissent's interpretation of the Restatement. Section 39 of the Restatement provides:

> (c) if the secondary obligor is not discharged from its unperformed duties pursuant to the secondary obligation by operation of paragraph (b) [quoted above], the secondary obligor is discharged from those duties to the extent:
>
> (i) of the value of the consideration for the release;
>
> (ii) that the release of a duty to pay money pursuant to the underlying obligation would otherwise cause the secondary obligor a loss; and
>
> (iii) that the release discharges a duty of the principal obligor other than the payment of money[.]

Plaintiff failed to present documentary evidence showing that Capitol was not discharged under subsection b of § 39 (terms of the release effect a preservation of the secondary obligor's recourse, or language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor). Thus, subsection c was not triggered. Assuming subsection c was triggered, there still would be a discharge under the Restatement because Ace's duty or obligation was one other than the payment of money, i.e., providing cement and masonry work. The reason for this distinction is explained in comment g to § 39, pp 173-174:

When the underlying obligation is performance other than the payment of money, a release of the principal obligor has an effect on the secondary obligor that is particularly difficult to quantify. First, as in all releases, the ability of the principal obligor to perform had there been no release must be considered. Yet the ability of a principal obligor to perform a nonmonetary obligation is typically not susceptible of reliable determination. Second, a factor not present when the underlying obligation is the payment of money—the relative cost of performance by the principal obligor and secondary obligor—complicates matters further. The cost of performance by the secondary obligor may be different than it would have been for the principal obligor. . . . Third, a principal obligor who has been released from the underlying obligation may be uncooperative in assisting the secondary obligor to establish defenses to the secondary obligation. These factual difficulties, combined with the fact that the secondary obligor's bargain contemplated the existence of a continuing obligation of the principal obligor to perform, make it inequitable to place on the secondary obligor any burden of demonstrating the existence and amount of the loss resulting from the release of the principal obligor when the underlying obligation is not the payment of money. Accordingly, this section discharges the secondary obligor to the extent of a release of nonmonetary obligations of the principal obligor.

Because it is unnecessary to our resolution of this case, we decline to decide today whether to adopt the exception in § 39(c) regarding nonmonetary obligations.

Affirmed.

COOPER, J., concurred.

C. L. LEVIN, J. (*dissenting*). I respectfully dissent.

Plaintiff, Will H. Hall & Son, Inc., was the general contractor for a construction project in Flint, Michigan. Ace Masonry Construction, Inc., was the

masonry subcontractor for two buildings in the project. Capitol Indemnity Corporation provided a performance bond for Ace. United States Fidelity & Guaranty Company provided a performance bond for Hall.

After Ace ceased work on the project, Hall hired another subcontractor to finish the masonry work. This litigation followed. Hall commenced an action against Ace. Ace counterclaimed against Hall, and filed a third-party complaint against USF&G.

Hall presented proofs in a jury trial, and rested. The trial court granted Capitol's motion for a directed verdict on the ground that Hall had not timely declared or notified Capitol of default. Hall and Ace then stipulated to release all their claims against each other. Hall appealed the directed verdict to this Court, which reversed and remanded for trial.[1]

On remand, Capitol moved for summary disposition on the ground that the release of Ace, the principal on the bond, also released the surety as a matter of law. The motion was granted.

A

I agree with the majority that the record does not show any agreement between Hall and Ace that Hall could continue to pursue Capitol, and does not indicate that Capitol consented to the release and its own continuing liability.[2]

---

[1] *Hall & Son, Inc v Capitol Indemnity Corp,* unpublished opinion per curiam of the Court of Appeals, issued June 15, 2001 (Docket No. 222262).

[2] The surety's consent is not a prerequisite to an effective reservation of rights. Notice thereof to the surety "may be advisable." Restatement Suretyship and Guaranty, 3d, § 38, comment b, 165-166.

The majority continues that there is no "language or circumstances indicating that [Hall] reserved the right to pursue Capitol," and that because the release "was broad, open-ended, and all-encompassing, it cannot be said that [Hall] intended to retain a claim against Capitol." *Ante*, p 233. The majority further continues that there is no evidence that "[Hall] could not recover its damages from Ace, or that the reason for the settlement and release was the insolvency of Ace. It is just as likely that Hall settled the case with Ace in order to avoid any potential liability on Ace's counterclaim." *Ante*, p 234. The majority concludes that Hall "failed to submit documentary evidence sufficient to create an issue of fact with respect to, and in support of, [Hall's] proposition that it intended to retain its claim against Capitol." *Id.*

B

The majority adverts to the absence of "language or circumstances" indicating that Hall had the right to pursue Capitol, and also to the absence of evidence that Hall could not recover its damages from Ace, or that Ace was insolvent. The words "language or circumstances" are found in the Third Restatement of Suretyship, which provides that when an obligee (Hall) releases the principal obligor (Ace), the secondary obligor (Capitol) is discharged from any unperformed duties unless the release preserves the secondary obligor's recourse against the principal obligor or the "language or circumstances" of the release otherwise show the obligee's intent to retain its claim against the secondary obligor, and which further provides that the secondary obligor, if not otherwise dis-

charged from further liability, is so discharged to the extent it can show loss or prejudice.

I would reverse and remand for trial because Capitol—not Hall—had the burden of persuasion on the issues of whether the "language or circumstances of the release otherwise show [Hall's] intent to retain its claim against" Capitol,[3] and of "loss or prejudice [to Capitol] caused by [Hall's] act" in releasing Ace.[4]

Release is an affirmative defense. MCR 2.111(F)(3)(a). The affidavit, and other papers, filed in support of Capitol's motion for summary disposition, did not advert to those issues, and did not claim or show that there was no genuine issue of material fact concerning those issues. On the summary disposition record so far made, there are genuine issues of material fact regarding those issues.

On remand, Capitol would also have the burden of showing, if it were to so claim, that the amount of loss Capitol sustained as a result of the release of Ace is not reasonably susceptible of calculation or requires proof of facts that are not ascertainable, shifting then the burden of persuasion to Hall to show the amount of Capitol's liability.[5]

I

Sections 37-49 of the Third Restatement of Suretyship and Guaranty set forth the authoritative view of the American Law Institute concerning the law applicable when the "obligee" (Hall) of a surety bond does an act that "changes the risks that were the subject of

---

[3] *Id.*, § 39(b)(ii) and § 49(1).

[4] *Id.*, § 39(c), § 49(2).

[5] *Id.*, § 49(3). See discussion in Part II, *infra*.

the secondary obligor's [Capitol's] assessment." "In most cases, in the absence of the secondary obligor's agreement to the contrary, this Title discharges a secondary obligor *to the extent that such acts would otherwise cause the secondary obligor to suffer a loss.*"[6] (Emphasis added.)

Hall's release of the principal obligor (Ace) constituted "an impairment of suretyship status"[7] that may have resulted in the discharge of the secondary obligation, as set forth in sections 38, 39, and 49 of the Restatement.

Sections 38 and 39 concern release of the underlying obligation.[8] The Restatement would eliminate the

---

[6] *Id.*, p. 157.

[7] *Id.*, § 37.

[8] Section 39 of the Restatement provides:

To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation:

(a) the principal obligor is also discharged from any corresponding duties of performance and reimbursement owed to the secondary obligor unless the terms of the release effect a preservation of the secondary obligor's recourse (§ 38);

(b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation unless:

(i) the terms of the release effect a preservation of the secondary obligor's recourse (§ 38); or

(ii) the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor;

(c) if the secondary obligor is not discharged from its unperformed duties pursuant to the secondary obligation by operation of paragraph (b), the secondary obligor is discharged from those duties to the extent:

(i) of the value of the consideration for the release;

(ii) that the release of a duty to pay money pursuant to the underlying obligation would otherwise cause the secondary obligor a loss; and

(iii) that the release discharges a duty of the principal obligor other than the payment of money;

historic reservation of rights doctrine, and requires, for there to be an effective reservation of rights, an express statement that the secondary obligor's—the surety's—rights of recourse against the principal obligor continue as though the release did not occur.[9]

If the obligee releases the principal obligor, the secondary obligor is discharged from any unperformed duties unless either the terms of the release effect a preservation of the secondary obligor's recourse or "the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor."[10]

The Reporter's notes to § 39 comment that an obligee's release of the principal obligor was traditionally regarded as a complete discharge of the secondary obligor. The Third Restatement, however, "adopts the

---

(d) the secondary obligor has a claim against the obligee to the extent provided in § 37(4).

Section 38 of the Restatement provides:

(1) When an obligee releases the principal obligor from, or agrees to extend the time for performance of, a duty to pay money pursuant to the underlying obligation, the release or extension effects a "preservation of the secondary obligor's recourse" with respect to that duty if the express terms of the release or extension provide that:

(a) the obligee retains the right to seek performance of the secondary obligation by the secondary obligor; and

(b) the rights of the secondary obligor to recourse against the principal obligor (§§ 21-28) continue as though the release or extension had not been granted.

(2) When the obligee effects a preservation of the secondary obligor's recourse in conjunction with a release or extension, the principal obligor's duties of performance and reimbursement and the secondary obligor's rights of restitution and subrogation continue as though the release or extension did not occur.

[9] Section 38, n 8, *supra.*
[10] Section 39(b), n 8, *supra.*

more modern policy generally followed by the Uniform Commercial Code with respect to impairments of recourse by discharging the secondary obligor *only to the extent it would suffer loss as a result of the release.*"[11] (Emphasis added.)

The same concept of discharging the secondary obligor only to the extent that the obligee's act "impairing suretyship status" causes loss to the secondary obligor is set forth in § 40 (Extensions of Time), § 41 (Modification of Underlying Obligation), and § 44 (Other Impairment of Recourse).

II

Section 49 of the Third Restatement speaks of the "burden of persuasion with respect to impairment of recourse."[12] In general, the secondary obligor, the

---

[11] Section 39, p. 175.

[12] Section 49 provides:

(1) A secondary obligor asserting discharge from a secondary obligation due to the obligee's impairment of the secondary obligor's suretyship status (§ 37) has the burden of persuasion with respect to the occurrence of the act constituting the impairment.

(2) Except as provided in subsection (3), the burden of persuasion with respect to loss or prejudice caused by an obligee's act impairing the secondary obligor's recourse against the principal obligor is allocated as follows:

(a) the burden of persuasion is on the secondary obligor if:

(i) the secondary obligor is in the business of entering into secondary obligations, received a business benefit for entering into the secondary obligation, or otherwise was induced to enter into the secondary obligation by separate consideration that directly benefits the secondary obligor; or

(ii) the act impairing recourse is a modification of the underlying obligation, unless the secondary obligor establishes that the modification is material;

(b) otherwise, it is presumed that the act impairing recourse caused a loss of impairment equal to the secondary obligor's liabil-

surety, has the burden of persuasion with respect to the occurrence of the act constituting the impairment, and, if the secondary obligor is, as is Capitol, in the business of entering into secondary obligations, it also has the burden of persuasion with respect to loss or prejudice caused by an obligee's act impairing the secondary obligor's recourse against the principal obligor.

Although, as the majority states, the summary disposition record does not, indeed, show language or circumstances indicating that Hall had the right to pursue Capitol, or that Hall intended to retain its claim against Capitol, or that Ace was insolvent, Capitol did not, under § 49 of the Restatement (concerning allocation of the burden of persuasion), discharge its burden of persuasion on its motion for summary disposition by simply showing that Capitol had released Ace.

Capitol's motion for summary disposition did not frame all the pertinent issues that need to be addressed before it can be decided whether Capitol's discharge of Ace fully discharged Capitol from all liability.

---

ity pursuant to the secondary obligation and the burden of persuasion as to the nonexistence or lesser amount of such loss is on the obligee.

(3) Notwithstanding subsection (2)(a), if:

(a) the secondary obligor demonstrates prejudice caused by the impairment of recourse; and

(b) the circumstances of the case indicate that the amount of loss is not reasonably susceptible of calculation or requires proof of facts that are not ascertainable.

It is presumed that the act impairing recourse caused a loss or impairment equal to the secondary obligor's liability pursuant to the secondary obligation, and the burden of persuasion as to any lesser amount of such loss is on the obligee.

III

It was open to Capitol, before moving for summary disposition, to have taken depositions of persons involved in the release, and otherwise knowledgeable regarding Ace and Hall, with a view to establishing that there was no language nor were there circumstances evidencing an intent by Hall to retain its claim against Capitol, and that Ace was solvent and that the release caused loss or prejudice to Capitol. Because Capitol did not so claim or show in moving for summary disposition, genuine issues of material fact remained unaddressed on the summary disposition record, and it was error to grant summary disposition.

A

While the stipulation read onto the record by Ace and Capitol's lawyers did not include a reservation by Hall of the right to continue this action against Capitol, the understanding, and possibly the agreement, as well, between Hall and Ace may have included a reservation of rights. Lawyers do not necessarily put everything on the record. See *Mikedis v Perfection Heat Treating Co*, 180 Mich App 189, 195; 446 NW2d 648 (1989). And then, again, there may not have been a reservation of rights.

B

Without regard to whether there was an express reservation of rights by Hall to continue this action against Capitol, it appears likely—having a mind that there was a settlement on the record with Ace and no

settlement with Capitol—that Hall expected and, indeed, intended to continue, as it did, to prosecute this action against Capitol.

### C

The concept that a guarantor is not discharged by an act of the obligee, absent a showing of loss or prejudice, expressed in the Uniform Commercial Code, is, of course, most authoritative, because a legislative enactment is an expression of public policy.

Extending that concept to compensated sureties finds support in the case law.[13]

### D

An Internal Revenue Service tax lien filed against Ace, adverted to in a pretrial motion, is some indication that Ace may have been in financial difficulty.

### E

The Third Restatement states, in respect to a release of the principal obligor, an exception—likely to be relied on by Capitol on a remand—to the general principle that the surety must show loss or prejudice. Subsection (c)(iii) of § 39[14] states that where the release discharges a duty of the principal obligor other than the payment of money, the secon-

---

[13] See *Becker-Boter Oil & Gas Co v Massachusetts Bonding & Ins Co*, 254 Mich 94, 96; 235 NW 869 (1931); *In re Landwehr's Estate*, 286 Mich 698; 282 NW 873 (1938); *Ramada Development Co v United States Fidelity & Guaranty Co*, 626 F2d 517, 521 (CA 6, 1980); 72 CJS, Principal and Surety, §§ 125, 146.

[14] See n 8, *supra*, for the text of § 39.

dary obligor is discharged without regard to whether the secondary obligor can show a loss.

This somewhat strange exception to the general principle that a compensated surety must show loss or prejudice is explained in comment g as justified on the ground that where the unperformed obligation is other than the payment of money the "effect on the secondary obligor" "is particularly difficult to quantify." The comment does not explain why this is not covered adequately by § 49(3)(b), which imposes the burden of persuasion on the obligee where the circumstances of the case indicate that the amount of loss is not reasonably susceptible of calculation or requires proofs of facts that are not ascertainable.

A recent article explains how this exception came about.[15] It appears that industry advocates persuaded the governing body of the American Law Institute (ALI), the Council, and the membership of the ALI, to insert this exception. We have found no case law, before or after, that supports or challenges this exception to the general principle that a compensated surety is required to show loss or prejudice.

In the instant case, in contrast with the example hypothesized in the commentary, the masonry work had been completed by another subcontractor before this action was commenced by Hall against Ace and Capitol. There was pretrial discovery, and active participation by Ace in the trial of this action against Ace and Capitol, until the trial court directed a verdict after Hall rested.

---

[15] Mungall & Arena, *Effect on surety of obligee's release of principal: A critical look at the rules in the restatement*, 70 Def Couns J 328 (2003).

It is noteworthy that the industry advocates would unravel the principle that the surety must show loss or prejudice even where a sale of goods is involved,[16] and the surety guarantees payment of money, which would seem to put the Restatement at odds with the Uniform Commercial Code.[17]

I would reverse and remand.

---

[16] *Id.*, p 336.
[17] See MCL 440.3605.