PHOENIX CONTRACTORS, INC v GENERAL MOTORS
CORPORATION

Docket No. 70844. Submitted May 2, 1984, at Grand Rapids.—Decided
June 28, 1984. Leave to appeal applied for.

Plaintiff Phoenix Contractors, Inc., contracted with defendant,
General Motors Corporation, for certain mechanical trades
work to be performed in a building belonging to the defendant.
Defendant also contracted with Darin & Armstrong, Inc., for
the installation of several presses in the building. Plaintiff
could not perform its work while the presses were being in-
stalled and, therefore, incurred substantial additional cost in
order to complete the job on time. It was understood by all
parties that the project had a set completion date and that no
extensions would be granted. Phoenix, and Owen-Ames-Kimball
Company, the general contractor on the project, brought an
action for damages against defendant, alleging that defendant
had interfered with Phoenix's orderly completion of its contract
by instructing Darin & Armstrong not to allow other subcon-
tractors, such as Phoenix, to keep Darin & Armstrong from
completing its contract on time. At the completion of plaintiffs'
proofs, defendant moved for a directed verdict. The Kent Cir-
cuit Court, George R. Cook, J., denied the motion. Judgment
was subsequently entered on the jury verdict in favor of plain-
tiff Phoenix. Defendant appealed, alleging that a "no damage
for delay" clause in the contract precluded Phoenix's claim as a
matter of law, that Phoenix had waived its cause of action, and

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 427, 469, 497, 532.
[2] 4 Am Jur 2d, Appeal and Error §§ 110, 886.
[3] 13 Am Jur 2d, Building and Construction Contracts § 52.
  17 Am Jur 2d, Contracts §§ 387-389.
  Validity and construction of "no damage" clause with respect to
  delay in building or construction contract. 74 ALR3d 187.
[4] 17 Am Jur 2d, Contracts §§ 400, 442.
  45 Am Jur 2d, Interference § 1.
[5] 75 Am Jur 2d, Trial § 576.
[6] 5 Am Jur 2d, Appeal and Error § 810.

that the trial court erred in its jury instruction. Plaintiffs cross-appealed. *Held:*

1. The "no damage for delay" clause was valid. Such a clause is subject to various exceptions. In this case there was a jury issue as to whether the "delay" caused to Phoenix was of a kind not contemplated by the parties or was caused by the active interference of the defendant, either of which would render this clause unenforceable. The trial court, therefore, did not err in denying defendant's motion for a directed verdict.

2. Evidence was presented sufficient to find that both parties waived the contractual requirements regarding work changes.

3. The trial court's jury instruction regarding active interference with a contract was not such an inaccurate statement of the law that the defendant was prejudiced thereby or that it resulted in a miscarriage of justice. The evidence presented was sufficient to allow the jury to find that defendant actively interfered with Phoenix's performance of its contract.

Affirmed.

1. MOTIONS AND ORDERS — DIRECTED VERDICT.

A trial court, in deciding whether to grant a defendant's motion for a directed verdict, must view the evidence and all legitimate inferences that may be drawn therefrom in a light most favorable to the plaintiff, and if the evidence so viewed establishes a prima facie case the motion should be denied.

2. MOTIONS AND ORDERS — DIRECTED VERDICT — APPEAL.

The Court of Appeals, on review of a denial of a motion for a directed verdict, is limited to the question of whether the party opposing the motion offered evidence about which reasonable minds could differ.

3. CONTRACTS — NO DAMAGE FOR DELAY CLAUSE.

A construction contract clause which precludes the contractor's recovery of damages for delays is generally valid; exceptions to the enforceability of such a clause exist where the delay (1) was of a kind not contemplated by the parties, (2) amounted to an abandonment of the contract, (3) was caused by bad faith on the part of the contracting authority, or (4) was caused by the active interference of the other contracting party.

4. CONTRACTS — ACTIVE INTERFERENCE WITH CONTRACT.

A jury, in order to find "active interference" with a contract, must find that the defendant committed some affirmative wilful act in bad faith which unreasonably interfered with the plain-

tiff's compliance with the contract; the requirement of bad faith implies knowledge on the part of the defendant.

5. TRIAL — JURY INSTRUCTIONS — REQUESTS FOR INSTRUCTIONS.

A trial court has the duty to consider requests for jury instructions by each of the parties and to formulate an instruction which understandably presents the applicable rules of law and essential legal principles involved when a Standard Jury Instruction is not applicable.

6. APPEAL — JURY INSTRUCTIONS.

The Court of Appeals will not reverse and order a new trial on the basis of an erroneous jury instruction unless the instruction is prejudicial or resulted in a miscarriage of justice.

*Warner, Norcross & Judd* (by *Jeffrey O. Birkhold* and *Shane B. Hansen*), for plaintiffs.

*Cholette, Perkins & Buchanan* (by *Grant J. Gruel* and *Anthony A. Derezinski*), for defendant.

Before: BEASLEY, P.J., and ALLEN and M. B. BREIGHNER,* JJ.

PER CURIAM. Following a jury trial, plaintiff Phoenix Contractors, Inc., was awarded damages in the amount of $199,084. At trial, plaintiff claimed damages for delay caused by defendant's interference with a construction project. The alleged interference was defendant's instruction to one of its subcontractors, Darin & Armstrong, Inc., not to allow other subcontractors to keep Darin & Armstrong from completing its contract on time. Plaintiff contended that Darin & Armstrong kept plaintiff from orderly construction and increased its costs of completion.

The construction project was undertaken by plaintiff pursuant to a written contract for the mechanical trades work in the press building of defendant's plant. This contract was one of sixteen

---

* Circuit judge, sitting on the Court of Appeals by assignment.

involved in the expansion of defendant's Fisher Body Production Plant in Wyoming, Michigan, to facilitate production of defendant's X-car line.

The contract was awarded in the usual manner. There was a series of bid documents, including a request for quotations, bid forms, drawings and specifications. Defendant's standard general conditions for all construction contracts, including conditions and addenda for the specific contract, were incorporated by reference in the written contract between the parties. Also included in the contract was a "no damage for delay" clause.

Defendant appeals as of right, and plaintiffs cross-appeal.

## ISSUES

I. Did the "no damage for delay" clause in the contract, as a matter of law, defeat plaintiff's claim for damages?

We find that the plaintiff was entitled to a jury determination of damages.

II. Did plaintiff waive its cause of action?

We find that a jury question existed as to the waiver claim.

III. Did the trial court commit reversible error in charging the jury with regard to the "no damage for delay" clause?

We do not find reversible error in the charge.

## THE EXCULPATORY CLAUSE

Plaintiff's responsibility under the contract involved installing piping for compressed air, heating and water. Plaintiff was also responsible for installing six heating units on the building roof.

Defendant contracted directly with Darin &

Armstrong, Inc., for installation and assembly of presses, and with the floor steel contractor, American Bridge. Defendant also acted as its own job representative and general contractor for the press installation project. This was not a typical arrangement since the general contractor did not have all subcontractors under its control.

Plaintiff got behind on its contract obligation because of delays. Additional man hours attributable to project changes were approved and paid for by defendant. Plaintiff got further behind, however, because it could not work while Darin & Armstrong was installing presses.

It was clear, and everyone in the project recognized, that no change in the completion date of the contract could be made. Plaintiff did complete the job on time, but at substantial additional cost which plaintiff attributes to interference and delay caused by defendant and its subcontractors, particularly Darin & Armstrong.

Defendant contends that the exculpatory "no damage for delay" clause relieves it of responsibility for plaintiff's claim as a matter of law. At the conclusion of plaintiff's proofs defendant moved for a directed verdict. Defendant contends that it was error for the trial court to deny a directed verdict.

In deciding whether to grant defendant's motion for directed verdict, the trial court must view the evidence, and all legitimate inferences that may be drawn therefrom, in a light most favorable to plaintiff. If the evidence, as examined in this manner, establishes a prima facie case the motion should be denied. *Vandendries v General Motors Corp*, 130 Mich App 195, 198; 343 NW2d 4 (1983). ·When a party appeals from a denial of a motion for directed verdict, this Court is limited on review to the question of whether the party opposing the

motion offered evidence about which reasonable minds could differ. *Perry v Hazel Park Harness Raceway*, 123 Mich App 542, 549; 332 NW2d 601 (1983).

Article 7(c) of the contract, the "no damage for delay" clause relied upon by defendant, reads as follows:

"(c) If the contractor is delayed in the completion of the several portions or the whole of the work comprehended in the contract due to acts of the owner, acts of the other contractors in performing a contract with the owner, fire, floods, strikes, or other casualties beyond the control and without the fault or negligence of the contractor, the time for completion shall be extended for a period determined by the owner to be equivalent to the time of such delay. The contractor will not be entitled to recover the actual damages he sustains by reason of such delays. (Contingency items in the contractor's bid are assumed to provide for continuing costs while the job is delayed.)"

We find this exculpatory clause to be valid. See *Owen Construction Co, Inc v Iowa State Dep't of Transportation*, 274 NW2d 304, 306 (Iowa, 1979), and Anno: *Validity and Construction of "No Damage" Clause with Respect to Delay in Building or Construction Contract*, 74 ALR3d 187, § 3, pp 203-206.

There are exceptions to the enforceability of such clauses. These exceptions include situations where the delay (1) was of a kind not contemplated by the parties; (2) amounted to an abandonment of the contract; (3) was caused by bad faith on the part of the contracting authority; or (4) was caused by the active interference of the other contracting party. See *Owen, supra,* p 307, and cases cited therein, and 74 ALR3d *supra,* at II, pp 203-231.

In this case, plaintiff contends that the "no

damage for delay" clause does not apply because there was no delay. The record shows that plaintiff completed the contract on time. We reject this contention, finding that the clause was applicable under the facts of this case. We do find, however, that a jury issue existed as to plaintiff's claim that the "delay" was of a kind not contemplated by the parties and/or that the delay was caused by the active interference of defendant.

Although plaintiff completed its contract on time, it sustained substantial additional costs. It was not permitted to work while another contractor, Darin & Armstrong, was setting presses. This interfering contractor was directed by defendant to give its work priority. The record shows that the interfering contractor was also insulated from the typical method for resolving on-the-job disputes. Darin & Armstrong answered directly to defendant, as opposed to the contractor in charge of the project. Construction projects of the kind involved in this dispute are normally handled by a tiered structure of authority. This structure is made up of the owner, a general contractor, and subconstractors.

The issue for the jury was whether this arrangement between Darin & Armstrong and defendant was within the contemplation of the parties at the time of entering into the contract. While there was conflicting evidence introduced concerning the availability of this knowledge to plaintiff, we find that such evidence, when viewed in the light most favorable to plaintiff, would prohibit the court from granting defendant's motion for directed verdict. Compare *John E Green Plumbing & Heating Co, Inc v Turner Construction Co*, 500 F Supp 910, 913 (ED Mich, 1980), and *Owen, supra*, p 307.

There was also conflicting evidence from which

the jury could find "active interference". To find "active interference" the jury must find that defendant committed some affirmative wilful act in bad faith which unreasonably interfered with plaintiff's compliance with the contract. *United States Steel Corp v Missouri Pacific R Co,* 668 F2d 435, 438 (CA 8, 1982).

The bad faith required implies knowledge on the defendant's part, which the jury could have found to be present on the basis that its conduct would interfere with plaintiff's ability to perform its contract on time. See *Algernon Blair, Inc v Norfolk Redevelopment & Housing Authority,* 200 Va 815; 108 SE2d 259 (1959).

## WAIVER

Defendant contends that plaintiff waived its right to claim damages. Defendant claims plaintiff did not request an extension of time for the performance of its work and did not provide defendant with notice of a change in the work before proceeding, as required by the contract.

We find that sufficient evidence existed to support a finding that the requirements contained within the exculpatory clauses of the contract were waived. *Campbell v City of Troy,* 42 Mich App 534; 202 NW2d 547 (1972); *Cascade Electric Co v Rice,* 70 Mich App 420; 245 NW2d 774 (1976).

There was evidence that both plaintiff and defendant ignored performance of the contract with respect to the contractual clauses relied upon by defendant.

The extension portion of the "no damage for delay" clause was clearly inapplicable because that option was simply not available to plaintiff. It was understood by all parties that the contract would

have to be completed by December 31, 1978. No extensions would be allowed.

Article 25 of the contract provided that all claims for changes in work had to be submitted promptly in writing and before the work was done. The evidence, however, established that defendant considered and approved a number of change orders in 1980 and 1981, even though the contract had been completed by that time.

Further, the record established that defendant would often authorize changes in the field or permit work to continue while considering a change order because of the urgent nature of the project. In particular, supervisory personnel of the general contractor testified that as early as September, 1978, well before additional manpower was added to the project, they made it known that plaintiff and other subcontractors were having problems in completing the job. A series of letters was introduced to show that there had been an ongoing dialogue concerning these delays. Defendant's personnel conceded the existence of this dialogue and their knowledge of the problem. Change orders approved by defendant came long after the fact.

## THE JURY CHARGE

The pertinent section of the jury charge provides:

"If you find that defendant actively interfered with plaintiff's performance of its contract in a manner not reasonably contemplated by both parties to the contract, then your verdict will be for plaintiff. If you find that defendant did not actively interfere with the plaintiff's performance of its contract, then your verdict will be for defendant. In this connection, defendant's interference, if you find there was such interference, it must have been a substantial cause of plaintiff's damages.

"By 'interference', I mean that General Motors did something which it ought reasonably not to have done or did not do something which it ought reasonably to have done."

When not limited by the rules governing requests for Standard Jury Instructions, the court has a duty to consider requests by each of the parties and to formulate an instruction which understandably presents the applicable rules of law and essential legal principles involved. *Perry v Hazel Park Harness Raceway, supra,* pp 548-549; *McNabb v Green Real Estate Co,* 62 Mich App 500, 513-514; 233 NW2d 811 (1975). When the instructions contain error, this Court will not reverse and order a new trial where the instructions are not sufficiently prejudicial or did not result in a miscarriage of justice. *Robertson v Swindell-Dressler Co,* 82 Mich App 382, 395; 267 NW2d 131 (1978).

We do not find this instruction to be an inaccurate statement of the law to the degree that defendant was prejudiced or that a miscarriage of justice resulted. As stated in this opinion, sufficient facts were present in the record to permit the jury to find that defendant "actively interfered" with plaintiff's contract performance. Although the language of the instruction could have been more precise and expansive, the instruction does not constitute error.

Moreover, the instruction as given may have misstated the law, but to defendant's benefit. The instruction can be read as requiring the jury to find both "active interference" and "not within the contemplation of the parties" before plaintiff was entitled to receive a verdict. As noted, these are two separate and independent exceptions to the exculpatory clause. It was only necessary for the

jury to find the presence of one of these exceptions in order to support a plaintiff's verdict. Plaintiff was not required to prove the applicability of both exceptions.

## CONCLUSIONS

Defendant was not entitled to a directed verdict. Fact issues were present. The jury could properly find that the "no damage for delay" clause was inapplicable because defendant "actively interfered" with the contract or because defendant's conduct was not "within the contemplation of the parties". There was sufficient evidence to allow the jury to find that contract requirements to validate changes were waived. The court's charge to the jury dealing with claimed exceptions to the "no damage for delay" clause was not so inaccurate as to be prejudicial to defendant or to result in a miscarriage of justice.

Affirmed.