# STATE OF MICHIGAN

# COURT OF APPEALS

MACOMB MECHANICAL, INC.,

      Plaintiff-Appellant,

v

LASALLE GROUP, INC. and TRAVELERS
CASUALTY AND SURETY COMPANY OF
AMERICA,

      Defendants-Appellees.

UNPUBLISHED
April 23, 2015

No. 319357
Wayne Circuit Court
LC No. 11-013403-CK

Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

PER CURIAM.

The circuit court summarily dismissed a plumbing subcontractor's lawsuit against a general contractor for payment of various costs, some arising under and others going beyond the scope of the subcontract. The circuit court inaccurately interpreted and incorrectly applied various provisions of the subcontract and therefore failed to recognize that plaintiff created several genuine issues of material fact. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This contractual dispute arises out of the construction of a dining facility at Fort Sill in Oklahoma. The United States Army Corps of Engineers (USACE) owns the project. The USACE contracted with Veterans Enterprise Technology Services, L.L.C. (VETS) to act as the prime contractor on the project. VETS subcontracted its general contracting duties to LaSalle Group, Inc. LaSalle, in turn, employed several sub-subcontractors, including Macomb Mechanical, Inc., which agreed to provide plumbing and mechanical work for the sum of $270,000. Macomb alleged that its work "was originally scheduled to be about 6 months," but that "unforeseen and differing site conditions" extended Macomb's work to 15 months.[1] Macomb further asserted that the project scope changed after entering its sub-subcontract, but

---

[1] In some lower court documents, Macomb asserts that it ultimately spent 16 months working on the project.

-1-

that LaSalle refused to sign change orders necessary to secure Macomb's proper payment. When LaSalle failed to pay Macomb the entirety of its requested compensation, Macomb filed this breach of contract action against LaSalle and sought payment under a surety bond issued by Travelers Casualty and Surety Company of America.

The circuit court summarily dismissed Macomb's claims based on two categories of the parties' sub-subcontract. First, Article 5.4 encompasses a broad "no damages for delay" clause: "In no event shall Subcontractor be entitled to claim nor shall Subcontractor be compensated for any delays, or any claims for acceleration, inefficiency, interruption, interference or the like."

Second, the circuit court relied upon a series of articles comprising "pay if paid" clauses:

2.1 Subject to approval by Contractor, and approval as required by the Subcontract Documents, Contractor will pay Subcontractor monthly progress payments provided as a condition precedent that Owner has paid Contractor. . . .

\* \* \*

2.7 Contractor will use Owner funds to pay Subcontractor within ten (10) days after receipt and Contractor shall have no obligation to pay Subcontractor for the Subcontract work, or any claims related thereto, unless and until Owner pays Contractor for the same. Receipt of funds by payment from Owner for specific payment to the subcontractor, shall be a condition precedent to Contractor's obligation to pay Subcontractor.

2.8 [Directions to Subcontractor for providing documentation for final payment.]

2.9 Upon satisfactory compliance with 2.8 above, Contractor shall incorporate Subcontractor's final payment application into Contractor's application to Owner, Conditioned upon precedent payment by Owner, Contractor will pay to Subcontractor the final payment for the Subcontract work within ten (10) days after receipt thereof from the Owner. . . .

\* \* \*

5.5 Subcontractor shall not be entitled to any increase in the Subcontract price or extension of the time unless the amount of any such increase and time extension has been agreed upon in writing, accepted by Owner . . . as provided in the Subcontract Documents, and as a condition precedent, paid by Owner to Contractor . . . .

The circuit court also summarily denied Macomb's claims against the surety bond, concluding that the bond's liability was coextensive with the bond holder. The court then awarded LaSalle and Travelers attorney fees as the prevailing parties. This appeal followed.

## II. STANDARD OF REVIEW

We review "de novo a trial court's decision on a motion for summary disposition." *Hackel v Macomb Co Comm*, 298 Mich App 311, 315; 826 NW2d 753 (2012). The circuit court relied upon materials beyond the pleadings in considering the motions, and summary disposition was thereby granted pursuant to MCR 2.116(C)(10). See *Spiek v Dep't of Transp*, 456 Mich 331, 338 n 9; 572 NW2d 201 (1998) (even if summary disposition is granted under the wrong rule, this Court may review the order under the correct rule). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The proper interpretation of a contract is a question of law that we also review de novo. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

> In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law. However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties. [*In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008) (citations omitted).]

## III. "NO DAMAGES FOR DELAY" CLAUSE

Macomb challenges the circuit court's dismissal of its claim to payments for costs arising because of project delay. Macomb sought $347,786 in delay-related costs. Macomb contends that the "no damages for delay" clause in the sub-subcontract is unenforceable because the delay in this case was not of a type contemplated by the contracting parties. Macomb asserts that LaSalle refused to permit Macomb to leave the project site during a partial stop-work period, failed to properly manage the project, and directed Macomb to submit delay damages to pass through to the project owner. Macomb further avers that the alleged increase in performance time from six to 15 months could not reasonably have been anticipated when Macomb prepared its bid. According to Macomb, LaSalle's conduct and the duration of the delay supports the conclusion that the "no damages for delay" clause does not preclude relief.

As noted, Article 5.4 of the sub-subcontract provides, in relevant part: "In no event shall Subcontractor be entitled to claim nor shall Subcontractor be compensated for any delays, or any claims for acceleration, inefficiency, interruption, interference or the like." This contractual language unambiguously provides that Macomb may not recover damages for delays,

acceleration, inefficiency, interruption, or interference. In addition, the scope of work description in the subcontract provides that "[n]o additional funds will be made for increase in fuel, materials, equipment and labor for the duration of the project." The "no damages for delay" clause in this contract does not exist in a legal vacuum, however.

"No-damage-for-delay clauses are commonly used in the construction industry and [are] generally recognized as valid and enforceable. However, because of their harsh effects, these clauses are to be *strictly construed*" against the project owner. *John E Green Plumbing & Heating Co, Inc v Turner Constr Co*, 742 F2d 965, 966 (CA 6, 1984) (quotation marks and citations omitted).[2] Such provisions recognize that "[a]mong the most obvious and common risks in the construction industry is the risk of delay." Beattie, *Apportioning the Risk of Delay in Construction Projects: A Proposed Alternative to the Inadequate "No Damages for Delay" Clause*, 46 Wm & Mary L Rev 1857, 1857 (2005). The parties to construction contracts vie to shift the risk of delay onto the other. Subcontractors, in general, want to minimize their delay risk so they can accurately assess a bid low enough to be competitive, while owners and general contractors attempt to minimize the economically devastating effect of delay damages affecting all tiers of a project. See *id.* at 1857-1858. See also *Technical Publication No. 108: A Study of the "No Damage for Delay" Clause*, M E Rinker Sr School of Building Construction, University of Florida (2000), pp 6-8.

As part of the strict construction given to "no damages for delay" clauses, many courts have imposed exceptions to their applicability. "These exceptions are rooted in the duty of good faith and fair dealing implied in every contract and are intended to avoid the otherwise draconian results that might flow from strict enforcement—namely, excusing the owner for harm to the contractor caused by the owner's egregious and unfair conduct." *C & H Electric, Inc v Town of Bethel*, 312 Conn 843, 854-855; 96 A3d 477 (2014). Even "a broad clause relating to delay for 'any cause,' is not to be read literally in all cases." 74 ALR3d 187, 208, § 5[a]. To this end, this Court has recognized several exceptions to the enforceability of "no damages for delay" clauses:

---

[2] Many jurisdictions have adopted this strict construction standard. See, e.g., *Wolff & Munier, Inc v Whiting-Turner Contracting Co*, 946 F2d 1003, 1008 (CA 2, 1991); *FD Rich Co v Wilmington Housing Auth*, 392 F2d 841, 843 (CA 3, 1968); *EC Ernst, Inc v Manhattan Constr Co of Texas*, 551 F2d 1026, 1029 (CA 5, 1977); *US Steel Corp v Missouri Pacific R Co*, 668 F2d 435, 438 (CA 8, 1982); *RaCON, Inc v Tuscaloosa Co*, 953 So 2d 321, 339 (Ala, 2006); *Little Rock Wastewater Utility v Larry Moyer Trucking, Inc*, 321 Ark 303, 311; 902 SW2d 760 (1995); *Tricon Kent Co v Lafarge North America, Inc*, 186 P3d 155, 159 (Colo App, 2008); *J & B Steel Contractors, Inc v C Iber & Sons, Inc*, 162 Ill 2d 265, 276; 642 NE2d 1215 (1994); *Cunningham Bros, Inc v City of Waterloo*, 254 Iowa 659, 664; 117 NW2d 46 (1962); *Mississippi Transp Comm v SCI, Inc*, 717 So 2d 332, 338 (Miss, 1998); *Edwin J Dobson, Jr, Inc v New Jersey*, 218 NJ Super 123, 128; 526 A2d 1150 (1987); *Forward Indus, Inc v Rolm of New York Corp*, 123 AD2d 374, 376; 92 NYS 2d 453 (1986); *Psaty & Fuhrman, Inc v Housing Auth of Providence*, 76 RI 87, 93; 68 A2d 32 (1949); *City of Seattle v Dyad Constr, Inc*, 17 Wn App 501, 517; 565 P2d 423 (1977).

These exceptions include situations where the delay (1) was of a kind not contemplated by the parties; (2) amounted to an abandonment of the contract;[3] (3) was caused by bad faith on the part of the contracting authority; or (4) was caused by the active interference of the other contracting party. [*Phoenix Contractors, Inc v Gen Motors Corp*, 135 Mich App 787, 792; 355 NW2d 673 (1984).][4]

Macomb contends that the delays in this case were not of the kind contemplated by the parties. "Delays that are not within the contemplation of the parties at the time of entering into the agreement . . . are not covered by [no damages for delay] clauses." *John E Green Plumbing & Heating Co, Inc v Turner Constr Co*, 500 F Supp 910, 911 (ED Mich, 1980). While Macomb does not claim bad faith, it does challenge LaSalle's active interference with Macomb's work. Macomb also asserts that its damages were caused by unreasonable delays. In relation to unreasonable delays, this Court has held:

It is our opinion that the department was only relieved from liability for reasonable delays caused by third parties. To hold otherwise would be to say that regardless of how long a third party delayed, plaintiff would be required to perform its part of the contract without any hope of reimbursement for any increased costs caused by the delay. We do not believe the department intended the coordinating clause to so read, for if the effect of that clause were such as the department contends, no responsible contractor would have entered into a contract on this project for the simple reason that the contractor would have no way of knowing how much it could cost it to perform or when it could expect to be finished with the project. A contractor can take a reasonably short delay into consideration when computing its bid on a project, but how could a contractor be expected to submit a competitive bid if it had to include in that bid expenses for a delay that could be of indefinite duration? We submit that a contractor could only compute a competitive bid if it were of the opinion that it would be reimbursed for additional expenses caused by unreasonable delays. [*E C Nolan Co, Inc v State of Michigan*, 58 Mich App 294, 302-303; 227 NW2d 323 (1975).]

---

[3] In *C & H Electric*, 312 Conn at 854, the Connecticut Supreme Court described this exception as encompassing "delays so unreasonable that they constitute an intentional abandonment of the contract by the [owner]." (Alteration in original.)

[4] Just as many jurisdictions strictly construe "no damages for delay" clauses against the project owner, many espouse judicially or legislatively created exceptions to such clauses. See, e.g., *FD Rich Co*, 392 F2d at 843; *Peter Kiewit Sons' Co v Iowa Southern Utilities Co*, 355 F Supp 376, 397 (D Iowa, 1973); *Hawley v Orange Co Flood Control Dist*, 211 Cal App 2d 708, 715-717; 27 Cal Rptr 478 (1963); *Tricon Kent Co*, 186 P3d at 159-160; *C & H Electric*, 312 Conn at 854; *James Corp v North Allegheny Sch Dist*, 938 A2d 474, 484 (Penn, 2007); *Western Engineers, Inc v State*, 20 Utah 2d 294, 296; 437 P2d 216 (1968).

Similarly, "[i]n a complex, multi-party project . . ., a responsible contractor can and should take reasonable delays into consideration when preparing its bid, but should not bear the burden of lengthy or indefinite delays, i.e., it is foreseeable that reasonable delays may occur." *Walter Toebe & Co v Michigan Dep't of Highways*, 144 Mich App 21, 30; 373 NW2d 233 (1985).

Here, Macomb created a genuine issue of material fact that an exception to the "no damages for delay" clause had been met, precluding summary dismissal of its claims. Macomb presented evidence that the USACE issued a general stop-work order lasting three months. Macomb asserts that the stop-work order was necessary because of an error caused by another contractor. Macomb has presented no evidence to support that assertion. Macomb has presented evidence, however, that LaSalle increased Macomb's costs during this delay. Despite that Macomb was not permitted to actively work during this time, Macomb presented evidence that LaSalle prevented it from mitigating its damages. Rather than allowing Macomb to leave the work site or pursue other opportunities in the interim, LaSalle forced Macomb to retain a presence on site and sit idle awaiting the restart of work.[5] This is similar to the situation in *Phoenix Contractors*, 135 Mich App at 791-793, where this Court found a jury issue. The defendant prevented the plaintiff from working in *Phoenix Contractors* because it ordered that another subcontractor's work be given priority. *Id*. at 793. The defendant tried to protect itself by dividing the work under the control of more than one general contractor. This Court did not allow the defendant to avoid its liability for delay damages based on the division of authority. This Court reasoned:

> The issue for the jury was whether this arrangement between [the interfering subcontractor] and defendant was within the contemplation of the parties at the time of entering into the contract. While there was conflicting evidence introduced concerning the availability of this knowledge to plaintiff, we find that such evidence, when viewed in the light most favorable to plaintiff, would prohibit the court from granting defendant's motion for directed verdict.
>
> There was also conflicting evidence from which the jury could find "active interference." To find "active interference" the jury must find that defendant committed some affirmative wilful act in bad faith which unreasonably interfered with plaintiff's compliance with the contract.

---

[5] Specifically, Macomb's plumbing foreman, Richard Berry, claimed, "Bruce White of LaSalle made it clear to me that Macomb was to remain on the project site or LaSalle would permit other trades to perform work that would make it impossible for Macomb to perform" without first removing and later replacing the other trades' installations at Macomb's expense. Project manager, Ian Morris, testified at his deposition that LaSalle "strongly advised we stay and work or we would be liable for any and all damages if other trades passed us up" despite that work on structures and installations prerequisite to Macomb's work were at a standstill during this period.

The bad faith required implies knowledge on the defendant's part, which the jury could have found to be present on the basis that its conduct would interfere with plaintiff's ability to perform its contract on time. [*Id*. at 793-794 (citations omitted).]

As in *Phoenix Contractors, Inc*, there exists in this case a question of fact whether the parties contemplated such an extensive delay in the flow of work. And there is a fact question whether Macomb could have contemplated that LaSalle would prevent it from mitigating its damages during such a delay.

Macomb also presented evidence that LaSalle's mismanagement of the project led to delays. Berry attested in an affidavit that Macomb "encountered interference with [its] work" caused by LaSalle's inability to "properly schedule the various trades" on the project. For example, Macomb was forced to "wait[] without adequate other work to perform" while another subcontractor built a wall so that Macomb "would have a structure in which to anchor the plumbing pipes." According to Berry, LaSalle "failed to hold proper progress meetings involving all trades to discuss potential conflicts . . . , thereby negatively impacting Macomb's work and prohibiting effective communication among the trades." Berry asserted that LaSalle's failure to respond to requests for information in a timely manner slowed the progress of Macomb's work. Berry also complained that LaSalle permitted other subcontractors to damage its plumbing work either directly or through the installation of improper materials, requiring Macomb to duplicate its efforts in some respects. Berry further indicated there were changes to the project scope after construction had commenced.

That the length of the delay was unreasonable is also supportable. As stated in *E C Nolan Co*, 58 Mich App at 303-304:

The trial court found that the 9 ½ month delay was not unreasonable. We disagree. The total contract construction period was only 24 months. A delay of 9 ½ months, or almost one-half of the total time allowed for the complete project, is in our view clearly unreasonable and excessive. Since we find the delay to be of unreasonable duration, it follows that the [defendant] was not insulated from liability.

Here, the entire contract was only scheduled to last six months. A nine-month delay pushed performance past a year.

Overall, Macomb presented sufficient evidence to create a triable issue on its claim for delay damages. Accordingly, the circuit court erred in summarily dismissing Macomb's request for $347,786 in delay damages against LaSalle and Travelers.

## IV. PAY-IF-PAID CLAUSES

Macomb next challenges the circuit court's dismissal of its claim for $21,589.20 remaining due for work indisputably covered by the sub-subcontract, and $172,049 for allegedly extracontractual work for which Macomb had requested change orders and additional work related to alleged discrepancies in project drawings. We agree that summary disposition was improper with respect to the second category of charges because genuine issues of material fact

exist concerning those claims. But the circuit court properly granted summary disposition to defendants with respect to the amount owed on the sub-subcontract itself because the "pay if paid" clauses bar recovery for that amount until the USACE or VETS compensates LaSalle.

As noted, several contractual provisions indicate that LaSalle's duty to pay Macomb for sub-subcontract work is conditioned on the USACE's or VETS's payment to LaSalle for that work. LaSalle Chief Executive Officer Steve Palermo submitted an affidavit stating that LaSalle had not been paid by VETS for the monies sought by Macomb for work performed on the project or for Macomb's requested extra compensation. According to Palermo, LaSalle had submitted a claim to VETS, which incorporated various payment requests, including those made by Macomb, into a final billing for the USACE. Palermo indicated that VETS filed suit against the USACE, which is apparently still pending, in federal court regarding payment for the project. Palermo claimed that LaSalle had submitted Macomb's proposed change orders 3, 4, and 5 to VETS for approval and payment, but that VETS had yet to take any action in that regard.

This Court has upheld the applicability of pay-if-paid clauses. In *Berkel & Co Contractors v Christman Co*, 210 Mich App 416, 418-419; 533 NW2d 838 (1995), this Court found no ambiguity in a contractual clause providing that "all payments to the subcontractor [were] to be made only from equivalent payments received by" the general contractor from the project owner. This Court continued:

> Berkel next argues that even if considered operative, a "pay when paid" clause is merely a provision that postpones payment for a reasonable amount of time, not indefinitely. Again, we disagree. As indicated earlier, the trial court quite properly found that Christman was not required to pay Berkel until it received payment from the owner. Failure to satisfy a condition precedent prevents a cause of action for failure of performance. *Lee v Auto-Owners Ins Co*, 201 Mich 39, 43; 505 NW2d 866 (1993). The contract contains no language limiting the condition precedent to any "reasonable time." Christman fulfilled any condition that required it to take active measures to collect the money due, as evidenced by its action against the owners. [*Id.* at 419-420.]

Although such clauses are valid, there is a limit. A contracting party who prevents or renders impossible the satisfaction of a condition precedent may not rely on that condition to defeat liability. *Mehling v Evening News Ass'n*, 374 Mich 349, 352; 132 NW2d 25 (1965); *Stanton v Dachille*, 186 Mich App 247, 258; 463 NW2d 479 (1990).

The sub-subcontract unambiguously provides that the owner's payment to LaSalle is a condition precedent to Macomb's right to receive payment from LaSalle. Palermo has sworn that neither the USACE nor VETS has paid LaSalle any of the monies sought by Macomb in this case. There is no evidence that LaSalle has taken any action to prevent satisfaction of the condition precedent. There is no evidence contradicting that VETS has filed a federal lawsuit against the USACE for payments, and that if VETS is successful, part of the judgment would benefit Macomb. Therefore, Macomb is not entitled to recover from LaSalle the amount

indisputably owed under the sub-subcontract. The circuit court properly dismissed that claim against LaSalle and against Travelers as surety.[6]

Yet Macomb created a genuine issue of material fact that $172,049 of its requested compensation fell outside the parameters of the sub-subcontract. If this fact is ultimately proven, the sub-subcontract would not apply to those amounts, including the pay-if-paid clauses. This allegedly extracontractual work was documented in Macomb's requested change orders 6 through 11. LaSalle refused to issue those change orders and therefore did not submit them to VETS or the USACE for payment. Macomb asserts that changes in the project drawings and specifications after Macomb submitted its bid caused it to incur additional costs that were not part of the sub-subcontract, prompting it to present the change orders to LaSalle. Had LaSalle issued the change orders, Macomb concedes that the work would have become part of the sub-subcontract. The failure to do so, according to Macomb, means this work was never incorporated into the parties' agreement. If the work is not governed by the sub-subcontract's pay-if-paid clause, then any payment owed to Macomb would have been due within a reasonable time. See *Smith v Dep't of Treasury*, 163 Mich App 179, 184; 414 NW2d 374 (1987) ("When no time for payment is specified, the law will presume a reasonable time.").

LaSalle, of course, disagrees with Macomb's position. LaSalle presented evidence that it submitted Macomb's proposed change orders 3, 4, and 5 to VETS for approval and payment, and that the work covered by those change orders is part of the federal lawsuit. LaSalle denied Macomb's proposed change orders 6 through 11, claiming that the underlying work was part of the base sub-subcontract, negating Macomb's claim for extra compensation. LaSalle argues that there is no evidence that the parties entered into a separate contract with respect to the alleged extracontractual work.[7] Therefore, LaSalle contends, its refusal to issue the change orders does not prevent the application of the sub-subcontract's pay-if-paid clause.

---

[6] "[T]he liability of the surety is coextensive with the liability of the principal in the bond . . . ." *Will H Hall & Son, Inc v Ace Masonry Constr, Inc*, 260 Mich App 222, 229; 677 NW2d 51 (2003).

Nevertheless, Macomb contends that it still may have a claim against Travelers for this dismissed claim because it would be against public policy to deny subcontractors lien rights in a public works project and then deny surety claims intended to replace such a lien. Michigan caselaw supports Macomb's description of the purpose of such sureties, but there is no precedential authority for expanding the surety's liability beyond that of the principal.

[7] LaSalle argues that Macomb never claimed that a separate contract exists with respect to the work covered by proposed change orders 6 through 11. While Macomb did not expressly identify its claim as asserting a separate contract, the gravamen of the complaint when read as a whole is for this very type of relief. "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). LaSalle has not identified any ground to conclude that it lacked fair notice of the nature of plaintiff's claim. Nor has LaSalle articulated any reason

Macomb presented evidence creating a genuine issue of material fact that proposed change orders 6 through 11 covered extracontractual work. Macomb's project manager, Morris, described at his deposition that LaSalle failed to follow the "chain of command" and directly ordered Macomb's foremen to engage in work under the guise of the sub-subcontract. Macomb management only learned of the work after it was underway and was forced to belatedly draft change orders. In an affidavit, Morris explained that LaSalle presented Macomb's foremen with Revision No. 9 "to the above ground plumbing-related Project plans and specifications," which were significantly different from the plans on which Macomb based its bid. "In order to mitigate delay," Morris attested, the foremen immediately "set about obtaining alternate materials." Macomb had to negotiate with out-of-state vendors with whom they had no relationship or expectation of discounted pricing. Now-useless materials shipped from Michigan had to be returned at extra cost. Morris further claimed that LaSalle personnel lulled him into believing the change orders would be issued.

Macomb further supported that it was not aware of Revision No. 9 until its foremen arrived on the site. The "Subcontractor Pre-Award" included with the executed sub-subcontract is unclear on this point. At one point, the document indicates that "amendments No. 1 thru No. 9 per the RFP dated October 4, 2007" were included in the scope of the work. At another point, the document proclaims that it is based on "Albert Kahn Drawings dated 3-18-09 Submittal No. 007." On April 23 and 24, 2009, LaSalle personnel emailed Macomb a series of drawings and "drawing Changes" upon which Macomb prepared its bid. Revision No. 9 was not included among those drawings. LaSalle's senior estimator admitted that he could not recall whether additional drawings were provided to Macomb. Macomb's plumbing foreman, Berry, attested that he had not seen Revision No. 9 before arriving at the site. Morris corroborated Berry's statement.

While LaSalle contends that Revision No. 9 fell within the scope of work contemplated in the base sub-subcontract, this represents a factual issue that should have been submitted to the trier of fact. LaSalle contends that Macomb was on notice of an updated drawing referred to as issue # 7 of the Albert Kahn Drawings because page 2a of the subcontract referenced "Albert Kahn Drawings dated 3/18/09 Submittal No. 007." However, Macomb's president, Scott Johnson, testified that he determined that the term "Albert Kahn Drawings dated 3/18/09 Submittal No. 007" was a reference to *underground* drawings that Macomb was given to correlate its above ground plumbing work; the underground work was not part of Macomb's work under the subcontract. Further, an email from Kelly Hill, a VETS office manager, to Don

why Macomb should not be permitted to amend its complaint to clarify the legal theory on which it seeks to recover for this additional work, to the extent such an amendment is needed. See MCR 2.116(I)(5) ("If the grounds asserted [for summary disposition] are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."). Also, LaSalle fails to address the possibility that, even if a separate express contract did not exist with respect to the additional work associated with the proposed change orders, other grounds for recovery could exist, such as unjust enrichment or quantum meruit. See *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006); *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993).

Hudgens of Macomb indicated that issue # 7 of the drawings was for internal review only and was not intended to be provided to Macomb for its work. The specifications were later updated to issue # 10, as reflected in an email from Rob Meredith of LaSalle to Morris, and Meredith directed Morris to resubmit Macomb's quotation accordingly. Because LaSalle claimed that the subcontract was signed on the basis of issue # 7 of the specifications, LaSalle maintained that it would entertain only a claim for increased costs between issue # 7 and issue # 10.

Overall, the evidence is conflicting regarding the extent to which the project drawings changed after Macomb bid on the project and the amount of additional work and costs necessitated by those changes. Therefore, a genuine issue of material fact exists regarding Macomb's claim that it was not provided updated drawings, thereby requiring Macomb to provide additional work and incur further expenses. Because no change order was issued with respect to the additional work and costs allegedly necessitated by the drawing discrepancies, the additional work and costs may reasonably be found to fall outside the scope of the sub-subcontract and therefore not be subject to the sub-subcontract's pay-if-paid clause. LaSalle would then be required to pay Macomb within a reasonable time. *Smith*, 163 Mich App at 184. Accordingly, the circuit court erred in dismissing Macomb's claim for $172,049 in additional work.

LaSalle also contends that Macomb's request for delay damages is precluded by the pay-if-paid provisions of the sub-subcontract. Specifically, neither the USACE nor VETS has paid LaSalle the $347,786 requested by Macomb, and therefore LaSalle asserts that it has no contractual duty to remit these funds to Macomb. In the event Macomb proves that the delay was not within the contemplation of the parties or that LaSalle's actions or interference caused an unreasonable delay, those damages will be beyond the scope of the sub-subcontract. Accordingly, the pay-if-paid clauses also would not apply to any delay damages proven by Macomb.

## V. OTHER CONTRACTUAL PROVISIONS

As alternate grounds for affirming the summary dismissal of Macomb's claims, see *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994), LaSalle cites various other provisions of the parties' sub-subcontract.

LaSalle relies on page 3 of the "Subcontractor Pre-Award," which was appended to and incorporated in the sub-subcontract, stating:

> <u>SCOPE:</u> It is understood that the following will be provided furnished and installed complete per all plans all specifications all addenda and or clarifications as issued by <u>Albert Kahn associates</u> for the <u>TASK ORDER NO. 0001, DESIGN AND CONSTRUCTION OF THE DINING FACILITY @ FORT SILL, OKLAHOMA.</u>

**(List Scope Here with any Exclusions)**

<u>Comply with and adhere to ALL requirements of the RFP (Request for Proposal) dated October 4, 2007, VETS, LLC proposal, IDG complete.</u>

<u>Albert Kahn Drawings dated 3-18-09 Submittal No. 007</u>

<u>Includes any and all changes associated with kitchen equipment drawings per all plans and all specs complete.</u>  [Emphases in original.]

LaSalle contends that Macomb thereby agreed that the sub-subcontract would include any addenda or clarifications issued by Albert Kahn, precluding Macomb's claim for additional payment based on drawing discrepancies.  This language does not preclude Macomb from seeking or obtaining a change order for any additional work necessitated by altered drawings.  Section 5 of the sub-subcontract is entitled "Changes/Claims" and specifically provides for the issuance of change orders for any "changes, additions, or deletions concerning the Subcontract Work," and for claims for an "increase or decrease in the Subcontract price" required by such changes.  LaSalle's reliance on the language in the preaward document is therefore misplaced.

Next, LaSalle points to Article 20.1 in the sub-subcontract's "Notice of Problems/Coordination" provision.  That paragraph required Macomb to "immediately notify Contractor [LaSalle] orally and in writing of any defect, inconsistency, error or omission in the Subcontract Documents, or any instruction, process, unsafe condition, . . . work not in a proper condition to receive Subcontract work, or other problems encountered or associated with the Subcontract Work[.]"  LaSalle argues that Macomb waited four to five months to notify LaSalle that it lacked documents, violating the "immediate" notice clause.  Record evidence supports that Macomb provided notice of the claimed drawing discrepancies much sooner than LaSalle suggests.  Macomb presented evidence that it first learned of the changed drawing after its foremen arrived on the project site on June 23, 2009.  The exact timing of initial verbal communications on this matter is not reflected in the record.  But Macomb sent a letter dated August 21, 2009, to LaSalle requesting a written change order with respect to additional materials and labor required by the changed drawing, contradicting LaSalle's delayed notification claim.  Overall, a genuine issue of material fact exists regarding whether timely notice was provided.

LaSalle  also cites Article 5.4 of the subcontract, which includes the "no damages for delay" provision, and also states:

> Any claim for an increase in the subcontract price or time for performance based upon Contractor's written or verbal order, or other act or omission of Contractor, Owner or A/E whether denominated as a change order or not, must be made by Subcontractor to Contractor, in writing, within five (5) working days from the date of such claimed order, act or omission, or at such earlier date required by the Subcontract Documents but in any event prior to starting work involved in the claim; otherwise, the claim shall be barred.  All such written claims must furnish full details and supporting documentation.

LaSalle posits that Macomb failed to provide written notice regarding the drawing discrepancies within five days, precluding recovery for any increase in the work price. However, the five-day notice period is triggered by "Contractor's written or verbal order, or other act or omission of Contractor, Owner or A/E whether denominated as a change order or not . . . ." On appeal, LaSalle merely states that Macomb did not provide notice within five days of the claimed drawing discrepancies. LaSalle does not attempt to explain how the drawing discrepancies themselves were an "order" made by the contractor. LaSalle does not anchor its argument to the provision of the drawings to Macomb or Macomb's realization that the scope of work had been altered. If LaSalle chooses to raise this claim on remand, it should explain its argument more fully. And Macomb may have grounds to argue that LaSalle waived this provision through communications between LaSalle and Macomb's foremen when they arrived on site.

LaSalle also quotes line item 22 of the sub-subcontract, which states: "If there are any discrepancies between the Government RFP, the VETS proposal and the Albert Kahn contract documents, you will be responsible for the most stringent, NO additional funds will be paid for discrepancies between these documents." LaSalle further quotes from Article 10 of the sub-subcontract: "Subcontractor acknowledges that all of the Subcontract Documents are on file in the Contractor's office and have been made available to Subcontractor for examination. Subcontractor represents that it has carefully examined all of such Subcontract Documents or waives such examination . . . ." LaSalle contends that in light of this language, Macomb acknowledged that it had the documents necessary to perform its work, that the documents were available for Macomb's review, or that Macomb waived such review. We do not find LaSalle's arguments convincing.

As discussed, section 5 of the sub-subcontract expressly provides for the issuance of change orders for any changes, additions, or deletions concerning the sub-subcontract work, and permits claims for an increase or decrease in the sub-subcontract price required by such changes. Macomb's acknowledgement that the sub-subcontract documents were on file and available for examination does not alter the fact that Macomb claims it was presented with *new* drawings *for the first time* when it arrived at the project site, nor does it alter the language in the sub-subcontract permitting a change order to be sought and issued for any changes, additions, or deletions concerning the sub-subcontract work. Further, LaSalle does not articulate how the changed drawings comprise a discrepancy "between the Government RFP, the VETS proposal and the Albert Kahn contract documents" for which no additional funds could be issued. It is unclear whether or how changes in the drawings themselves constitute a discrepancy between "the Albert Kahn contract documents" on the one hand and either "the Government RFP" or "the VETS proposal" on the other. LaSalle cannot leave it to this Court to discover and rationalize the basis for its argument. *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). Accordingly, we discern no valid alternate ground to affirm the circuit court's dismissal of Macomb's action.

As we are reversing the majority of the circuit court's summary disposition order, LaSalle and Travelers are no longer prevailing parties entitled to attorney fees for their inconvenience. Accordingly, we reverse the circuit court's imposition of such costs below.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ William B. Murphy
/s/ Elizabeth L. Gleicher