NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SOUTHWEST CONCRETE PAVING CO.,
*Plaintiff/Appellee/Cross-Appellant*,

*v.*

SBBI, INC., et al.,
*Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 17-0294
FILED 5-22-2018

Appeal from the Superior Court in Maricopa County
No. CV2014-005443
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Cheifetz Iannitelli Marcolini, PC, Phoenix
By Claudio Eduardo Iannitelli, Cynthia R. Estrella, Jason Kelly Thomas
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Thompson Krone PLC, Tucson
By Evan L. Thompson, Russell E. Krone
*Counsel for Defendants/Appellants/Cross-Appellees*

_____

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James P. Beene joined.

_____

**C R U Z**, Presiding Judge:

**¶1**         We are asked to review several disputes between a general contractor, SBBI, Inc. ("SBBI"), and concrete paving subcontractor Southwest Concrete Paving Co. ("Southwest"). We affirm the trial court's delay damages, extra work, and attorneys' fee award to Southwest. We reverse and remand for further proceedings to address whether SBBI properly deducted the cost of dowel basket installation from Southwest's contract price.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2**         Southwest performed concrete paving work at the UAS Maintenance Hangar at Holloman Air Force Base in New Mexico (the "Project"). Hensel Phelps Construction Co. ("Hensel Phelps") was the general contractor for the Project. SBBI contracted with Hensel Phelps to perform certain site work and paving work on or about February 22, 2012 (the "SBBI Contract"). SBBI then contracted with Southwest on March 12, 2012, to complete paving work (the "Southwest Contract").

**¶3**         The SBBI Contract obligated SBBI to "[f]urnish and install reinforcing, dowels, and dowel baskets for the apron paving."[1] Both the Southwest Contract and Southwest's "Final Proposal" included "drilling and installing of dowel bars" but neither mentioned dowel baskets. That same language appeared in SBBI's Bid Proposal to Hensel Phelps.

**¶4**         SBBI asked Southwest to price the removal of dowel baskets from the Project plans and specifications. Southwest told SBBI that it did not include dowel baskets in its Final Proposal because it did not believe the owner would approve their use. Nonetheless, Southwest prepared a

_____

[1]         Dowel baskets are a method of installing dowel bars used in certain concrete applications. Dowel baskets are placed on grade and new concrete is poured over the basket assembly. Dowel bars are installed by drilling into the vertical edge of existing concrete. The parties do not dispute that dowel baskets and dowel bars are not the same.

report showing dowel basket installation would cost $106,278.00. Hensel Phelps later removed dowel baskets from the final plans and specifications and issued a change order reducing SBBI's contract price by $106,278.00. SBBI then issued a deductive unilateral change order reducing Southwest's contract price by the same amount.

¶5          The paving portion of the Project suffered numerous delays. The parties disputed who caused the delays; Southwest contended that SBBI failed to properly coordinate other subcontractors' work and that one subcontractor, Bray Construction, caused significant delays through surveying and aggregate base layer errors. SBBI, on the other hand, contended Southwest was responsible for some of the delays alongside Bray. Southwest sued SBBI and its surety seeking $172,852.40 in damages based on twenty-five days of delay. Southwest also sought $21,575.64 for power washing, $11,706.56 for repairs to freshly poured concrete, and $6,875.40 to remove and replace a concrete panel, all of which it contended constituted extra work beyond the scope of the Southwest Contract.

¶6          SBBI moved for partial summary judgment, contending the unilateral deductive change order was appropriate because both the SBBI Contract and the plans and specifications included dowel baskets when the parties entered into the Southwest Contract. SBBI also contended that the Southwest Contract precluded Southwest's delay damages claim:

> Should the Subcontractor, without fault or neglect on its own part, be delayed in the commencement or completion of the Work by the fault or neglect of the Contractor or another subcontractor on the project, Subcontractor shall be entitled to a reasonable extension of time only. . . . In no event shall the Subcontractor be entitled to receive compensation or damages for any aforementioned delays except to the extent that the Contractor shall receive such compensation or damages from the Agency/Owner or another third party.

The trial court granted partial summary judgment as to the unilateral change order, finding Southwest's Final Proposal "included dowel baskets in its bid price[.]" The court denied summary judgment on Southwest's delay damages claim, however, finding genuine issues of material fact remained as to who had caused the delays.

¶7          Following a bench trial, the court denied Southwest's concrete repair claim but awarded its full power washing and concrete panel replacement claims, finding both constituted extra work under the

Southwest Contract. The court also awarded $40,094.20 in delay damages, finding the clause quoted above did not apply because "SBBI willfully and knowingly delayed Southwest's ability to timely perform" by "fail[ing] to appropriately supervise Bray."

¶8        The court also invited Southwest to submit an attorneys' fee application and statement of costs. Southwest did so, seeking $78,124.50 in attorneys' fees. SBBI opposed the application and filed its own attorneys' fee application requesting a similar amount of fees. The court determined that Southwest was the successful party and awarded it $20,000 in attorneys' fees.

¶9        SBBI timely appealed the final judgment as well as the ruling denying summary judgment on Southwest's delay damages claim. Southwest timely cross-appealed the court's ruling granting summary judgment to SBBI on the unilateral deductive change order. We have jurisdiction over both the appeal and cross-appeal pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

**DISCUSSION**

I.      The Court's Denial of Summary Judgment on Southwest's Delay Damages Claim Is Not Appealable.

¶10       SBBI first challenges the trial court's order denying summary judgment on Southwest's delay damages claim. An order denying summary judgment typically is not appealable even after entry of a final judgment. *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 408 n.50, ¶ 105 (App. 2012). This is because such orders do not necessarily affect the final judgment; they only indicate the trial court's belief that the issues raised should proceed to trial. *Navajo Freight Lines, Inc. v. Liberty Mut. Ins. Co.*, 12 Ariz. App. 424, 428 (1970). We may review the order, however, if the denial is based on a purely legal issue or if the proponent reasserts the issue in a motion for judgment as a matter of law pursuant to Arizona Rule of Civil Procedure 50 or other post-trial motion. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 577, ¶ 22 (App. 2015). We review *de novo* whether a pure question of law precluded the denial of summary judgment. *Id.*

¶11       SBBI contends, as it did below, that the Southwest Contract limited Southwest's remedy for delays "in the commencement or completion of the Work by the fault or neglect of the Contractor or another subcontractor on the project" to "a reasonable extension of time only." The parties agree on appeal that "no delay damages" clauses generally are

4

enforceable. *See United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 138, ¶ 16 (App. 2006) ("Express contract provisions governing remedies or damages are generally binding on the parties."). Southwest argues, however, that we should adopt an "active interference" exception to enforcement that has been recognized by other courts. *See, e.g., C & H Elec., Inc. v. Town of Bethel*, 96 A.3d 477, 486 (Conn. 2014) ("Many, if not most, other states recognize a separate, judicially created active interference exception to 'no damages for delay' clauses."); *Triple R Paving, Inc. v. Broward Cty.*, 774 So. 2d 50, 54 (Fla. Dist. Ct. App. 2000) ("Clauses providing for 'no damages for delay,' except in the case of fraud, bad faith, or active interference by the owner, are legal and enforceable."). SBBI, meanwhile, relies on other out-of-state cases holding that the active interference exception requires "an affirmative, willful act." *C & H*, 96 A.3d at 486 (citing cases); *see also Pellerin Constr., Inc. v. Witco Corp.*, 169 F. Supp. 2d 568, 583 (E.D. La. 2001); *Phx. Contractors, Inc. v. Gen. Motors Corp.*, 355 N.W.2d 673, 677 (Mich. Ct. App. 1984).

¶12 While the parties argue these legal issues on appeal, the trial court did not directly address them in its summary judgment ruling. It instead denied SBBI's motion based on its conclusion that material issues of fact remained as to who caused the project delays. SBBI did not seek judgment as a matter of law during or after trial, nor did it file any post-trial motions. SBBI thus waived its right to appeal this ruling. *John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, 537, ¶ 19 (App. 2008) (concluding, because the trial court denied the motion for partial summary judgment due to the existence of material factual disputes, party had waived its right to appeal the sufficiency of the claims at issue by not reasserting the issue during or after trial).

II.     The Trial Court Did Not Abuse Its Discretion in Awarding Southwest Extra Work Compensation.

¶13 SBBI also challenges the court's damages awards relating to power washing and concrete panel replacement. Because these issues were resolved in the bench trial, we review the court's legal conclusions *de novo* but defer to its findings of fact unless they are clearly erroneous. *Town of Marana v. Pima County*, 230 Ariz. 142, 152, ¶ 46 (App. 2012). We review any factual issues in the light most favorable to upholding the court's ruling. *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 417, ¶ 2 (App. 2010).

¶14 SBBI first contends these tasks fell within paragraph 24 of the Southwest Contract, which provides:

> Except to the extent of any proceeds received by the Contractor for the benefit of Subcontractor under a policy of builders' risk or fire insurance, Contractor shall not be liable or responsible for any loss or damage to the Work; Subcontractor shall be responsible for any loss or damage to the work; Subcontractor shall be responsible for the correction or restoration of any such loss or damage to the Work, or to the work of the Contractor or any other subcontractor, resulting from the operations of the Subcontractor . . . Subcontractor shall take reasonable precautions to protect the Work from loss or damage prior to acceptance by the Agency/Owner.

¶15        SBBI cites no evidence to show the concrete panel repair at issue fell under this provision.   As for concrete cleaning, Southwest presented evidence that it consistently excluded traffic control and concrete cleaning from its bids because it did not have the necessary equipment for those tasks.  SBBI contends on appeal that "[t]raffic control . . . did not entail the protection of the concrete surface which Southwest was required to protect" but again cites no supporting evidence.  The court did not clearly err in finding that these items were beyond the scope of the Southwest Contract.

¶16        SBBI also contends Southwest never obtained written authorization to proceed with the power washing or concrete panel replacement pursuant to paragraph 8 of the Southwest Contract:

> In addition to Change Orders issued under paragraph 7 . . . Contractor may from time to time . . . require by written order that Subcontractor perform extra Work reasonably related to the original Work hereunder. . . .  Such extra Work shall be invoiced weekly, in reasonable detail and amply supported on the basis of the performing party's actual direct costs and without overhead or profit or allowance therefore. Payment of such invoices shall be made at the time of the next ensuing progress payment or final payment hereunder.

> In no event shall Subcontractor proceed with a Change Order without a written Change Order under paragraph[] 7 above or a written order from the Contractor for extra Work under paragraph 8; and contractor shall not be liable for any additional costs incurred or delays encountered in the performance of such Work without such a written notice

approved by the Contractor's home office or a duly designated representative from the Contractor's home office.

SBBI did not issue written extra work orders for the power washing or concrete panel repairs. But Southwest presented evidence showing SBBI did not always enforce this requirement.

¶17 Southwest also presented evidence that SBBI verbally directed it to proceed with the concrete panel repairs and directed it to proceed with concrete cleaning in a punch list. Southwest also presented evidence showing it was only responsible for approximately forty-five percent of the tire marks that necessitated cleaning. Moreover, SBBI's project manager testified that formal orders were not always prepared and that he knew Southwest would dispute responsibility for the power cleaning costs. Given this evidence, the court's awards did not constitute clear error. *See Kocher v. Dep't of Revenue of State of Ariz.*, 206 Ariz. 480, 482, ¶ 9 (App. 2003) ("A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists.").

III.    The Trial Court Did Not Abuse Its Discretion in Awarding Attorneys' Fees to Southwest.

¶18 Section 12-341.01(A) affords the trial court discretion to award attorneys' fees to the successful party in an action arising out of contract. *McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*, 171 Ariz. 207, 216 (App. 1992). We will affirm a successful party determination absent an abuse of discretion. *Am. Power Products, Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 367, ¶ 12 (2017).

¶19 SBBI contends Southwest was not the successful party because it only recovered approximately $68,000 of its original $442,602.63 demand. The fact that a party does not recover all of its requested relief does not preclude it from being deemed the successful party.[2] *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 178 Ariz. 425, 430 (App. 1994); *see also Lee v. ING Inv. Mgmt., LLC*, 240 Ariz. 158, 161, ¶ 10 (App. 2016) (providing a party may be successful for purposes of A.R.S. § 12-341.01(A) "even when the recovery it obtains is 'significantly reduced'") (quoting *Berry v. 352 E.*

---

[2]    We also decline SBBI's invitation to "remand . . . to the trial court directing [it] to articulate" its methodology in awarding fees to Southwest. The trial court need not explain its fee award so long as the record contains a reasonable basis for it. *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 569, ¶ 9 (App. 2007).

*Virginia, L.L.C.*, 228 Ariz. 9, 14, ¶¶ 23-24 (App. 2011)).  Moreover, the fact that Southwest obtained a money judgment, while not dispositive, is an important consideration in determining who is the successful party.  *Lee*, 240 Ariz. at 161, ¶ 10.  The trial court did not abuse its discretion in awarding attorneys' fees to Southwest.

IV.     Issues of Material Fact Remain as to Whether the Southwest Contract Excluded Dowel Baskets.

¶20          In its cross-appeal, Southwest challenges the court's ruling granting partial summary judgment to SBBI affirming its unilateral deductive change order regarding dowel basket installation.  We review a grant of partial summary judgment *de novo*.  *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 112, ¶ 18 (2017).

¶21          We first consider the relevant terms of the Southwest Contract.  If the terms are clear and unambiguous, we give effect to them as written.  *Town of Marana*, 230 Ariz. at 147, ¶ 21.  If the terms are ambiguous, "parol evidence may be used to explain [the ambiguity], but in the absence of fraud or mistake, it may not be used to change, alter or vary the express terms in a written agreement."  *Id.* (quoting *Brand v. Elledge*, 101 Ariz. 352, 358 (1966)).

¶22          Paragraph 1 obligated Southwest to "perform and furnish all labor, supervision, materials, [and] equipment, to complete the work identified and described in [S]chedule A:  Work."  It also provided that the work was to be performed "strictly in accordance with the contract documents including but not limited to the contract between the owner and contractor, . . . plans, specifications, . . . and other documents identified in Schedule B attached hereto," which defined "Contract Documents" to include the SBBI Contract as well as the project plans and specifications.  Schedule A similarly provided that the work "shall be in compliance with project plans, specifications, . . . [and] contract documents[.]"  But while Schedule A defined the "Scope of Work" to include "drilling and install of dowel bars," it did not include dowel baskets.

¶23          Southwest contends Schedule A demonstrates an agreement to exclude dowel baskets, but SBBI contends the Southwest Contract obligated Southwest to follow the plans and specifications available at that time, which included dowel baskets.  When parties submit competing interpretations of a contract's meaning, the court should consider "the offered evidence and, if [the court] finds that the contract language is reasonably susceptible to the interpretation asserted by its proponent, the

evidence is admissible to determine the meaning intended by the parties." *Town of Marana*, 230 Ariz. at 147, ¶ 21 (quoting *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154 (1993)).

**¶24** Southwest presented evidence showing that Schedule A's reference to "dowel bars," which it contends are installed "by drilling into the vertical edge of existing concrete," necessarily excluded the use of dowel baskets. It also presented evidence showing that it chose not to include dowel baskets in its Final Proposal because it believed the owner would not approve them in the final plans. Southwest also presented evidence that it would have provided dowel baskets at no additional cost had the owner approved them. Finally, Southwest presented evidence that SBBI copied the language of Southwest's "Final Proposal" verbatim in its own bid proposal to Hensel Phillips and in Schedule A of the Southwest Contract.

**¶25** Based on this evidence, we conclude that the Southwest Contract is reasonably susceptible to Southwest's interpretation that it did not include dowel baskets. This evidence thus is admissible. *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 212 Ariz. 381, 385, ¶ 19 (2006). Construing the evidence in Southwest's favor, as we must in reviewing a grant of summary judgment, we conclude that genuine issues of material fact remain as to whether the Southwest Contract included dowel baskets and, therefore, whether the unilateral change order reducing Southwest's contract price by the amount estimated for their installation was proper. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 116, ¶ 17 (App. 2008) ("[A] court must view the [summary judgment] evidence in a light most favorable to the non-moving party and draw all justifiable inferences in its favor."). We thus reverse the grant of partial summary judgment on this issue and remand for further proceedings.

V. Southwest May Recover Reasonable Attorneys' Fees and Taxable Costs Incurred on Appeal.

**¶26** Southwest requests its attorneys' fees incurred on appeal pursuant to A.R.S. § 12-341.01(A). Southwest is the successful party on appeal, and its claims clearly arise out of contract. We therefore will award it reasonable attorneys' fees and taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶27 We reverse the trial court's grant of partial summary judgment to SBBI on the dowel baskets issue and remand for further proceedings. We affirm as to all other issues raised.

